STATE EX REL. ALVAN WALDO HYDE *v*. JOHN M. DOWE, COMPTROLLER.

MALTBIE, C. J., AVERY, JENNINGS, ELLS and DICKENSON, Js.

Argued June 5—decided July 1, 1942.

*Thomas J. Conroy,* assistant attorney general, with whom were *Nicholas F. Rago,* deputy attorney general, and, on the brief, *Francis A. Pallotti,* attorney general, for the appellant (defendant).

*Barclay Robinson,* for the appellee (plaintiff).

MALTBIE, C. J. In this action a mandamus was sought directing the comptroller of the state to place the plaintiff upon the retirement list of state employees and thereafter to draw orders for the payment to him of a retirement salary. On April 5, 1909, the plaintiff enlisted in the Governor's Foot Guard and thereafter he continued a member and officer of that organization until, on June 8, 1934, he retired at his own request. During this period he received compensation from the state on a per diem basis when he was in field training or on parade, for two or three days in each year, and for seven years, when he was major and commandant, an additional sum of $50 a year for his responsibility for the equipment of the company. On February 25, 1915, the plaintiff was appointed a voting machine commissioner for the state, and held that office until June 30, 1933. During this period he received, as full compensation for the performance of his duties, the sum of $100 for examining and reporting on each machine, this sum being paid, not by the state, but by the corporation applying for the examination. How many machines he so examined is not found. Since 1916 the plaintiff has been trustee of the Connecticut State Hospital, serving without compensation. He attended meetings of the trustees on the average of about three times a year, also various meetings of its executive committee, and he was frequently called upon for advice by the superintendent of the institution. He was appointed public utilities commissioner of the state on November 28, 1934, and continued as such until June 30, 1941, at a salary of $9000 a year. When the Retirement Act was passed in 1939, there was in existence a classification of positions and schedules of compensation of those in the employment of the state, but the membership in the Foot Guard and the positions of voting machine com-

missioners or trustees of the State Hospital were not included in it; nor was membership in the Foot Guard or the positions referred to listed on the employment record cards in the office of the state auditors. The compensation of members of the Foot Guard is paid "by the comptroller, on the approval of the governor, in accordance with pay rolls, properly receipted, and attested and sworn to by the commanding officer." General Statutes, § 821.

On June 11, 1941, the plaintiff was over sixty years of age. He applied for retirement as of June 30, 1941. The retirement commission ruled that only his service as public utilities commissioner could be counted as determining the years of service upon which a retirement salary could be based, and that as that was less than the minimum number of years of service required for retirement at the age of sixty, in the absence of disability, he was not entitled to a retirement salary. The trial court concluded that the word "service" in the act is used in its ordinary sense, not with the meaning of employment connoting compensation; that the plaintiff had been in the service of the state since his enlistment in the Foot Guard, a period of more than thirty years; and that, therefore, he was entitled to be retired, at a salary amounting to 60 per cent of that he had received during the last five years of his holding office as public utilities commissioner.

The plaintiff relies upon the following provision in the Retirement Act: "Any person in the service of the state shall, upon application by himself or the executive head of the department, commission or institution for which he is serving, be retired, subject to the following conditions as to term of service and age, and shall receive a salary as hereinafter provided: After twenty years of service, in the aggregate, and reaching the age of seventy years . . . or being a

male person, having reached the age of fifty-five, after twenty-five years of service, at a salary equal to fifty per cent of his average salary for the five years next preceding his retirement; after thirty years of service, at a salary equal to sixty per cent of his average salary for the five years next preceding his retirement;" with further provisions in similar language giving a larger retirement salary in cases where the number of years of service is greater. General Statutes, Cum. Sup. 1939, § 67e; Sup. 1941, § 11f. The Retirement Act was adopted upon the basis of the report of a committee appointed to study the matter, and that report includes the result of an actuarial study to determine an amount which should be deducted from the compensation paid each state employee toward the cost of retirement salaries. It gives a table of salaries paid state employees, the lowest of which was $720 a year. Under the act, retirement salaries are paid in part from a special fund made up by contributions deducted after July 1, 1939, from the compensation paid those "in the service of the state," with a provision that not more than one-half of the salaries shall be paid from this fund. During the first six years, the act provides that deductions shall equal $2\frac{1}{2}$ per cent of the salary of each person, and thereafter such percentage not exceeding 5 per cent as an actuarial restudy indicates to be necessary, such contributions to be "deducted from the payroll by the comptroller." Cum. Sup. 1939, § 71e; Sup. 1941, § 14f. "All persons in the service of the state" are required to contribute to the fund unless they notify the comptroller in writing that they do not desire to come within the provision of the act, and if they do not contribute "they shall be deemed to have waived all rights for retirement salary." Cum. Sup. 1939, § 73e; Sup. 1941, § 16f.

Under these provisions it is evident that the basis upon which a retirement salary is to be granted is that since July 1, 1939, any person claiming it must have contributed a portion of a salary which he receives from the state and must be upon a regular payroll. Since July 1, 1939, the words "in the service of the state" as used in these statutes necessarily connote the receipt of a regular salary from the state in accordance with payrolls submitted to the comptroller. It is a familiar principle of statutory construction that where the same words are used in a statute two or more times they will ordinarily be given the same meaning in each instance. *Beacon Falls* v. *Seymour*, 44 Conn. 210, 217. When, in § 67e, the legislature used the words "service of the state," it evidently intended that they should have a meaning at least substantially similar to that in which they are used in the provisions as to contributions in effect since July 1, 1939; that is, as connoting payment of a regular salary to the person seeking retirement. We take judicial notice, however, of the fact, which the legislature must have known, that the method of paying many state employees has been greatly changed in the last few years by the establishment of a new and better financial system for the state, and that previous to the inauguration of that system many persons in the service of the state whose salaries are now paid upon regular payrolls submitted to the comptroller were compensated by the state in other ways. If, previous to July 1, 1939, a person received from the state a regularly recurring compensation, he would be "in the service" of the state within the provisions of § 67e, although those payments were not made on a regular payroll submitted to the comptroller.

The basis upon which the amount of a retirement salary is determined under § 67e is not, however,

simply "service to the state" but "years of service." To say that one who gives only a small fraction of his time at irregular intervals to the service of the state and devotes all the rest of his time to his own purposes has spent a year in the service of the state offends against common sense. This is not to say that one must have given all of his time to that service, for the nature of his work may have been such that the duties imposed upon him did not require this, but unless in any year he has been regularly engaged in some state service which required that he devote at least a substantial part of his time to that service he cannot properly claim to have given a "year of service" to the state. It is inconceivable to us that by the words "years of service" the legislature meant to include in the basis for granting a retirement salary to any person a year when, at irregular intervals, he served the state only on a few scattered days, payment for which was made solely upon a per diem basis; nor can we conceive that the legislature meant to include service where no compensation was received or where compensation was paid by others than the state.

The retirement commission was right in ruling that the service of the plaintiff in the Foot Guard, as voting machine commissioner and as trustee of the State Hospital could not be counted in determining his "years of service" to the state, and the trial court was in error in ruling to the contrary.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.