STATE OF DELAWARE v. WILLARD P. MOORE.

(*October* 28, 1954.)

HERRMANN, J., sitting.

*Stephen E. Hamilton, Jr.*, Deputy Attorney-General, for the State.

*William E. Taylor, Jr.*, for the defendant.

Superior Court for New Castle County, Indictment No. 406, 1954.

HERRMANN, J.:

The defendant entered a plea of guilty to a charge of operating a motor vehicle while under the influence of intoxicating liquor. The Court ordered a presentence investigation pursuant to Criminal Rule 32(c)[1]. The presentence report has been

[1]Criminal Rule 32(c) of this Court, *Del. C. Ann.*, taken from Rule 32(c) of the *Federal Rules of Criminal Procedure*, 18 *U. S. C. A.* provides as follows:

prepared and now, prior to the imposition of sentence, the defendant seeks a copy of the report or, at least, an opportunity to examine it. The probation officer has standing instructions from this Court prohibiting him from disclosing the report or its contents to the defendant or his attorney. The defendant's motion challenges the propriety and wisdom of those instructions.

The question for decision is this: Is disclosure of the presentence report to the defendant or his attorney required either (1) by due process of law, or (2) for the improvement of the administration of criminal justice?

## 1. *Due Process*

The defendant contends that he is denied due process of law if he is not afforded the opportunity of examining the report which will be considered by the Court in formulating the sentence to be imposed. The defendant urges that due process requires that he not only have knowledge of the contents of the presentence report but also that he have the opportunity to refute unfavorable information contained therein. It is argued by the defendant that an undisclosed presentence report denies to the defendant a fair hearing through all of the stages of the proceedings against him and that, therefore, his constitutional rights are violated.

"(c) Presentence Investigation

"(1) When Made. The probation officer of the court shall make a presentence investigation and report to the court before the imposition of sentence or the granting of probation unless the court otherwise directs. The report shall not be submitted to the court or its contents disclosed to anyone unless the defendant has pleaded guilty or has been found guilty.

"(2) Report. The report of the presentence investigation shall contain any prior criminal record of the defendant and such information about his characteristics, his financial condition and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the Court."

The Supreme Court of the United States has discussed due process of law in connection with presentence reports. In *Williams v. People of State of New York*, 337 *U. S.* 241, 69 *S. Ct.* 1079, 93 *L. Ed.* 1337, there was presented a broad constitutional challenge to the statutory policy of New York which permitted a sentencing judge to consider information regarding a convicted defendant's past life, health, habits, conduct and mental and moral propensities, notwithstanding the fact that such information was undisclosed and was obtained outside of the courtroom from persons whom the defendant could not confront or cross-examine. The Court there reviewed the historical latitude allowed to English and American Judges in choosing the sources and types of information to aid them in determining the sentence to be imposed upon a convicted defendant. It was pointed out that such latitude went so far as to include the practice of exercising personal knowledge of the character and background of the offender. Rule 32(c) of the Federal Rules of Criminal Procedure, from which our Criminal Rule 32(c) was taken, was called "A recent manifestation of the historical latitude allowed sentencing judges". In the *Williams* case [337 *U. S.* 241, 69 *S. Ct.* 1085], the Supreme Court sanctioned an undisclosed presentence report and stated:

"The considerations we have set out admonish us against treating the due-process clause as a uniform command that courts throughout the Nation abandon their age-old practice of seeking information from out-of-court sources to guide their judgment toward a more enlightened and just sentence. * * * The due-process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure. So to treat the due-process clause would hinder if not preclude all courts—state and federal—from making progressive efforts to improve the administration of criminal justice."

The defendant contends that the *Williams* case is not applicable because, in that case, the defendant did not request access to the presentence report before sentence was imposed.

The distinction is accurate but I find wholly untenable a contention based upon the premise that the Supreme Court affirmed a death sentence which it would have reversed for denial of due process if only counsel had been more diligent. It is clear that the views expressed in the *Williams* case on the subject of due process are not rendered inapposite by the distinction stressed by the defendant.

The decision in the *Williams* case is in accord with the evolution of Rule 32 (c) of the *Federal Rules of Criminal Procedure.* The draft of the Federal Rules, as submitted to the Supreme Court by the Advisory Committee appointed by that Court, contained the following:

"(2) Report. The report of the presentence investigation shall contain any prior criminal record of the defendant and such information about his characteristics, his financial condition and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the court. After determination of the question of guilt the report shall be available, upon such conditions as the court may impose, to the attorneys for the parties and to such other persons or agencies having a legitimate interest therein as the court may designate."

It is interesting to note that the Supreme Court adopted the first part of the recommended rule, which now appears as Federal Rule 32(c) (2), but that it rejected the portion of the recommended rule which required disclosure of the presentence report.

The defendant's argument on due process confuses the situations existing before and after conviction. Before conviction, the defendant is clothed with all the well-known guaranties and safeguards provided by the due process clause, including the right to a hearing, the right to examine adverse witnesses, and the right to offer evidence in his own behalf. Such constitutional guaranties apply where the question for consideration is the guilt or innocence of the defendant; they

do not apply to sentencing processes. See *Williams v. People of State of New York, supra.* After conviction, a criminal case becomes more of a social problem than a legal action. After conviction, the sole problem before the Court is this: What correctional treatment of the defendant will best subserve the interests of the State, the interests of the defendant and the interests of justice? The Court is not circumscribed by the due process clause of either the Federal or the State Constitutions, *Const. U. S. Amend.* 14, *Del. C. Ann.* Const. art. 1, § 9, as to the methods it may select in its attempt to solve that problem and to arrive at the most "enlightened and just sentence."

### 2. *Administration of Justice*

The importance of the presentence report must be fully understood in order to evaluate the advantages and disadvantages of a rule of non-disclosure. The presentence report now has an established and recognized place in the administration of criminal justice. For example, in the *Williams* case, the Supreme Court said:

"* * *. Highly relevant—if not essential—to his [the judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial.

"Undoubtedly the New York statutes emphasize a prevalent modern philosophy of penology that the punishment should fit the offender and not merely the crime. * * * The belief no longer prevails that every offense in a like legal category calls for an identical punishment without regard to the past life and habits of a particular offender. * * * Retribution is no longer the dominant objective of the criminal law. Reformation and rehabilitation of offenders have become important goals of criminal jurisprudence.

"* * *. In general, these modern changes have not resulted in making the lot of offenders harder. On the contrary a strong motivating force for the changes has been the belief that by careful study of the lives and personalities of convicted offenders many could be less severely punished and restored sooner to complete freedom and useful citizenship. This belief to a large extent has been justified.

"Under the practice of individualizing punishments, investigational techniques have been given an important role. Probation workers making reports of their investigations have not been trained to prosecute but to aid offenders. Their reports have been given a high value by conscientious judges who want to sentence persons on the best available information rather than on guesswork and inadequate information. To deprive sentencing judges of this kind of information would undermine modern penological procedural policies that have been cautiously adopted throughout the nation after careful consideration and experimentation. * * *"

Thus, the significance of the presentence investigation and report is no longer in doubt. Information has taken the place of intuition in this area of criminal jurisprudence. Because of its importance, the report should be as accurate and complete as possible. The report can be no better than the sources of the information it contains and any practice that would tend to "dry up" sources of information would adversely affect the accuracy, completeness and general usefulness of the report.

Disclosure of the report to the defendant would have such detrimental effect upon sources of information because it would destroy or seriously impair the confidential nature of the report in the eyes of informants. In deciding upon a sentence, and particularly in determining whether probation should be granted, the judge should have an accurate and complete character study of the defendant. Three sources are especially productive for this type of information: Members of the defendant's family, his employers and members of the community, private and of-

ficial. If the probation officer can assure such persons that any information they give will be held confidential, it is to be presumed that they will be more out-spoken. On the other hand, it is presumable that sources of information often would "dry up" if it were known that information would not be kept confidential and that, as a result, personal retaliation or unpleasant controversy in court might follow.

In addition to the detrimental effect upon sources of information and the resultant weakening of the report, disclosure of the report would unduly delay the imposition of sentence. An appealing reason for disclosure is the opportunity it would afford for independent, investigation and refutation of unfavorable data. Such verification, however, would require much time and it often would result in acrimonious hearings of collateral issues which, in the final analysis, may not be important to the sentencing judge. It is difficult to predict how much time would be required between verdict or plea and sentence if such were the practice. Delay of this kind is not consonant with the best administration of justice.

Disclosure to the defendant's attorney only is not a practical solution of the problem. Such limited disclosure would not avoid undue delay. Moreover, the Court should not interpose such a barrier between the defendant and his counsel. The relationship between attorney and client is one of confidence and intimacy and it would be unwise to permit judicial disturbance of that relationship. If the presentence report were available to counsel only, he often would be under pressure to inform his client of its contents in order to show why a more favorable prsentation of the case could not be made or why a more lenient sentence was not forthcoming. To resist that pressure would often destroy the confidence of the client; to yield to it would destroy the confidential nature of the report.

It is true that the Attorney General receives a copy of the presentence report but experience, both before and after the adoption of our Rule 32(c), has demonstrated that such prac-

tice does not destroy the confidential nature of the report. Unlike defense counsel, the Attorney General occupies an official position and he is not placed in the dilemma created by the confidential relationship between defense counsel and his client.

Now what are the benefits of disclosure? It may be argued that the presentence report is subject to all of the hazards of human fallibility and that disclosure of the report, with opportunity for refutation, is essential to insure accuracy. This contention is forceful because it is founded upon the time-honored principle *"audi alteram partem"*.[2] The necessity of accuracy, of course, may not be disputed but it is questionable whether accessibility of the report to the defendant would be an effective safeguard. It is to be expected that the average convicted defendant would deny or attempt to discount every unfavorable feature of the report; and any attempt at verification by defense counsel would lead to the inconclusive controversy and unacceptable delay heretofore discussed.

The effective safeguard of accuracy is not disclosure of the report. The effective safeguard of accuracy is twofold: First, it is the probation officer's integrity, intelligence and devotion to duty under the supervision and guidance of a cautious sentencing judge. The second effective safeguard of accuracy is our practice under which the judge, just prior to sentence and in open court, gives to the defendant or his counsel opportunity to be heard, makes inquiry as to any doubtful matters which may be important to him in the formulation of the sentence and states, carefully and fully, the adverse features which have entered into his decision. Thus, in the great majority of cases, without disclosing the details of the report or the sources of information and without inviting dilatory attacks upon the accuracy of the report, the judge may accomplish as much verification as is rea-

[2]See "A Trial Judge's Freedom and Responsibility"—Judge C. E. Wyzanski, Jr., *65 Harv. L. Rev.* 1281, 1291.

sonable or necessary. I am convinced that the disadvantages of disclosure are not counterbalanced by the questionable safeguard of accuracy.

It is my conclusion that, as a general rule of practice, neither the defendant nor his attorney should have access to the presentence report. On the other hand, I do not think that we should have an inflexible rule that would make it mandatory to hold the presentence report as a confidential paper. I am of the opinion that the rule of non-disclosure should prevail generally unless there are unusual circumstances or reasons to justify an exception to the general rule.

There are no such unusual circumstances or reasons in the instant case. Accordingly, the motion for leave to examine the presentence report will be denied.