STATE OF CONNECTICUT *v.* GEORGE E. GULLETTE

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 2-14185

154

Argued August 17—decided December 22, 1964

*Louis I. Gladstone,* of Bridgeport, for the appellant (defendant).

*John D. Ward,* assistant prosecuting attorney, for the appellee (state).

KOSICKI, J. The defendant was found guilty, after a trial before a jury, of an attempt to break and enter with criminal intent, in violation of § 53-77 of the General Statutes. In his appeal, the defendant has assigned nine errors which we shall examine in detail, after first considering what appears to be the principal issue, that is, whether the court should have declared a mistrial when, upon a poll of the jury, one juror signified her verdict as being "Not Guilty." The factual situation pertaining to that issue is not in dispute.

The case was tried before a jury of eleven, which procedure, we assume, was by stipulation. After one hour of deliberation, following the court's charge, the jury returned and announced that they were

unable to reach a unanimous verdict. The court then instructed the jury in accordance with the approved language in the court's instructions pertaining to a juror's deliberative duties in *State* v. *Smith,* 49 Conn. 376, 386, and returned the jury for further consideration. One and one-half hours later, the jury made known, through their foreman, that they had arrived at a verdict, and thereupon they reconvened in open court. The following then took place:

"The court: Do you gentlemen agree that all jurors are present? Mr. Gladstone: Yes, your Honor. The court: Inquire of the verdict, if they have reached a verdict. The clerk: Are you agreed upon a verdict in the case of State versus George E. Gullette? What say you, is he guilty or not guilty of the crime charged in the complaint? The foreman: Guilty as charged. The court: You may accept and record the verdict. Mr. Gladstone: May I request that the jury be polled? The court: Yes. Call the roll and ask the jury whether the verdict is guilty or not guilty." The first nine jurors announced their verdict as "Guilty." When the tenth juror was asked the question whether she found the defendant guilty or not guilty, the following took place: "Mrs. Ferguson: It's difficult for me. I came—— Verdict came unanimous. I was the last one that held out. The court: Madam, you are asked whether the verdict is guilty or not guilty. Mrs. Ferguson: Not guilty. Mr. Gladstone: If your Honor please, under the circumstances I would move for a mistrial. The court: Well, I thought the court made it clear that your verdict, of course, must be a unanimous verdict. Now, at this hour I am not going to ask you to go back because it's getting very late. I know you can't have a very good schedule for tomorrow. Mr. Gladstone: That's correct. I have to be in the Legislature tomorrow. The court: Could you

have an associate from your office come down? Mr. Gladstone: Well, if your Honor please, in view of the fact that the jury has been polled and they have reported a verdict and I asked that the jury be polled and one juror, Mrs. Ferguson, indicated that her decision was not guilty, under the circumstances I would think that a mistrial is in order. The court: Well, I am not certain that that follows. Have you completed the poll of the jury? The clerk: Mrs. Mary Malis guilty or not guilty? Mrs. Malis: Guilty. The clerk: That completes it, your Honor.

"The court: All right. I am going to read this again to you members of the jury. Although the verdict to which each juror must, of course, agree it must be his own conclusion and not a mere acquiescence in the conclusion of his fellows. Yet, in order to bring twelve minds to a unanimous result, the jury should examine with candor the questions submitted to them and with true regard in deference to the opinions of each other. In conferring together the jury ought to pay proper respect to each other's opinions and listen with candor to each other's arguments. If much the larger number of the panel are for conviction, a dissenting juror should consider whether the doubt in his or her mind is a reasonable one which makes no impression upon the minds of so many men and women equally honest, equally intelligent who have heard the same evidence with the same attention and with equal desire to arrive at the truth under the sanction of the same oath. On the other hand, if a majority are for acquittal, the minority ought seriously to ask themselves whether they may not reasonably or ought not to doubt the conclusion of a judgment which is not concurred in by most of those with whom they are associated and distrust the weight or sufficiency of that evidence which fails to carry conviction to the mind of their fellows. So, to boil

it all down I reiterate your verdict must be a unanimous verdict. I am sorry. I know it's not a happy lot for any of us at this late hour, but I have to ask the jury again to return to the deliberating room and reconsider their verdict. If they can't arrive, then, of course, they should say so through their foreman."

After this instruction to the jury, considerable colloquy ensued between the court and defense counsel, in which objection was made against further consideration of the case by the jury. This discussion took place before the jury. The foreman of the jury then interrupted, stating that when the jury left the deliberating room the verdict was unanimous, and the following took place: "Mr. Gladstone: If your Honor please, I am going to object to this. The foreman: Absolutely. It was agreed upon. The court: Wait a minute. Let's not argue in the presence of the jury. The jury may retire to their room." The defendant again objected to the procedure and took an exception to the court's adverse ruling. He then moved for a mistrial, and the motion was denied. Four minutes after the jury retired they returned to the courtroom to announce their verdict, which was "Guilty." The jury was again polled and each juror announced his verdict to be "Guilty." The court then inquired of the jurors: "Is this your verdict of guilty and so say you all?" The response does not appear, but evidently there was no dissenting voice, otherwise the transcript should disclose it or defense counsel would have objected. The verdict was then ordered accepted and recorded.

The question before us is apparently one of first impression in Connecticut. The decisions we have examined all present a situation where the request to poll the jury had been denied. There is no disagreement as to the rule which prevails in our state,

that a defendant in a criminal case is not entitled to an individual poll of the jury as a matter of right. *State* v. *Tucker,* 146 Conn. 410, 415; *State* v. *DiPietro,* 120 Conn. 537, 540; *State* v. *Hoyt,* 47 Conn. 518, 533. Under our practice, the presiding judge has absolute discretionary power to grant or deny a motion for a poll of the individual jurors. *State* v. *Hoyt,* supra; note, 49 A.L.R.2d 619, 627. Where the motion is granted, as in this case, the precise question arises as to what action the court is empowered or obliged to take when, after there was an announcement of a unanimous verdict by the foreman, and after the verdict had been accepted and ordered recorded by the presiding judge, an individual juror, on being polled, announced a contrary verdict. Or, to state the question more exactly: Where such an individual announcement is made which is inconsistent with the verdict first stated, is it mandatory on the court to declare a mistrial, or is it within the discretion of the court to have the jury retire for further consideration and for a new announcement of their verdict?

On the question before us there appears to be considerable conflict of authority. In *Bruce* v. *Chestnut Farms Chevy Chase Dairy,* 126 F.2d 224, 225, the rule is stated as follows: "There can be no question of the right of a juror, when polled, to dissent from a verdict to which he has agreed in the jury room, and when this happens, the jury should either be discharged or returned to their room for further deliberation." To the same effect is *Solar* v. *United States,* 86 A.2d 538, 541 (D.C. Mun. App.), and *Emmert* v. *State,* 127 Ohio St. 235, 237. In case of such dissent, "it is generally held that the jury should be sent out to deliberate further although there is also authority to the effect that under such circumstances the court must declare a mistrial." 53 Am. Jur. 705, Trial, § 1019, and cases cited.

In certain other jurisdictions the strict common-law rule appears to be followed and no reconsideration is permitted after the verdict was announced in court and a dissent expressed by one or more jurors after an individual poll. See such cases as *Kramer v. Kister,* 187 Pa. 227; *Commonwealth v. Zierenberg,* 133 Pa. Super. 112; *Mattice v. Maryland Casualty Co.,* 5 F.2d 233; *Commonwealth v. Lemley,* 158 Pa. Super. 125. In each of these cases, it was declared generally, as a guiding principle, that a verdict obtained upon a reconsideration, after lack of unanimity appeared when the verdict was first announced, would be likely to subject such verdict to suspicion of coercion or improper influences, and that the integrity of the verdict as well as the preservation of secrecy in jury deliberations required that a mistrial be directed and a new trial ordered.

Although our Supreme Court of Errors has not decided the particular question before us, it may be said fairly that the import of our state decisions dealing with irregularities affecting verdicts and jury deliberations would seem to indicate that in such situations the common law is not strictly followed. That would certainly be the case where no prejudice is shown to the losing party and no advantage indicated in favor of the prevailing party. See, for example, such cases as *Genuario v. Finkler,* 136 Conn. 500, 502 (conversation with juror); *Yavis v. Sullivan,* 137 Conn. 253, 264 (papers improperly in jury room); *Gimelli v. Waterbury Cadillac Co.,* 109 Conn. 722, 725-727 (same); *State v. Carta,* 90 Conn. 79, 80 (same); *Bluett v. Eli Skating Club,* 133 Conn. 99, 104 (remark of juror); *Burns v. State,* 84 Conn. 518, 520, 521 (same); *Wood v. Holah,* 80 Conn. 314, 316 (misconduct of trier); *Brodie v. Connecticut Co.,* 87 Conn. 363, 368 (juror's improper visit to *locus in quo); Pettibone v. Phelps,* 13 Conn. 445, 450 (conversation with juror); *Farrington v.*

*Cheponis,* 82 Conn. 258, 260 (failure of trial court to rebuke counsel and juror for improper conduct requiring new trial).

The argument of the defendant, that in the situation stated in the present case direction of a mistrial is mandatory, is very persuasive and has strong support in decisions of other jurisdictions, such as those noted above. Those decisions make a mistrial mandatory when there is a single juror's dissent in open court to a verdict first announced as unanimous. In such instance there is, initially, at least, a surface implication that there had been no unanimity when the jury left the deliberating room, because the dissenting juror at that time, despite the foreman's announcement of the verdict, was not of a firm conviction and unchanging mind as to the verdict announced in open court. That, however, presents a question of fact which can be readily ascertained without violating the secrecy of the jury chamber. If the dissent arose not so much from a vacillating state of mind as from a confusion concerning an unfamiliar procedure, then, of course, no inference can be drawn that the juror was undecided and that the verdict failed of being unanimous. A somewhat similar situation was present in *State* v. *Mosca,* 90 Conn. 381, where the foreman was apparently confused as to the form in which the verdict was to be rendered and the verdict first announced did not correctly express the unanimous verdict of the jury.

Verdicts in jury cases, because a unanimous decision is required, are almost of necessity the result of extensive deliberation and some compromise of individual opinions in order to arrive at an agreement acceptable to all. *Meade* v. *Smith,* 16 Conn. 345, 356. It might be expected, therefore, that the polling of the jury would tend to revive some latent doubt in a juror's mind as to the correctness of his

individual position; and, consequently, might tend to produce confusing results. In the present case, the answer given by the juror on the poll, when taken together with all the circumstances as they appear on the record, cannot be regarded as inevitably conclusive of her dissenting individual decision, either at that time or at any time after the jury had made known their arrival at a unanimous verdict and their readiness to announce it. Her response is equally consistent with the inference that the question put to her on the individual poll had, in her mind, some relation to what her private attitude had been during the jury deliberations, rather than what her final decision was, which made the verdict nonunanimous.

The court, in its memorandum of decision on the motions to set aside the verdict and in arrest of judgment, stated what facts were evident, in addition to those appearing in the transcript. We can resort to the memorandum to gain a clear understanding of the scope of inquiry at the trial and the basis of the court's decision. *Andreozzi* v. *Rubano,* 145 Conn. 280, 282. The court said: "It was apparent to me that Mrs. Ferguson, I believe that was her name, was emotionally upset. The color of her face was flushed. It is most likely, in my opinion, that in view of the foreman's statement, which was not denied by her, that she had voted guilty in the deliberating room and was impelled to say not guilty because of the stress and strain that was hers as a result of a long and controversial deliberation extending over a three-hour period in the jury room." In the absence of a finding, and in view of the submission and argument of counsel on the basis of a transcript reporting only the part of the proceedings beginning with and following the announcement of the verdict, we cannot hold as a matter of law that the court abused its discretion in denying the motion for direction of a mistrial or that such denial was

prejudicial in any degree to the rights of the defendant. See *State* v. *Williamson*, 134 Conn. 203, 204.

The defendant has assigned nine errors, which we shall consider specifically. The error first assigned is that the court erred in accepting and having ordered recorded the verdict announced by the foreman of the jury before there had been a viva voce assent by all the members of the jury panel. This assignment ignores our formulary procedure, which has been stated with precision in *State* v. *Tucker*, 146 Conn. 410, 415. In a criminal case, the verdict is first reported orally by the foreman of the jury. It is then ordered accepted and recorded by the court. The clerk then addresses the panel: "Ladies and gentlemen of the jury, listen unto your verdict as it is accepted and ordered recorded by the court. You and each of you do say that the accused is guilty of the crime with which he stands charged, and this is your verdict and so say you all?" The jury then responds, "It is," or makes its assent known through either word or gesture; and if an individual juror disagrees, he then makes known his dissent. In *State* v. *DiPietro*, 120 Conn. 537, 540, cited by the defendant in support of his proposition, it is clearly stated that the verdict should be accepted by the court before the final declaration is made by the clerk: "[W]e consider that it would be better practice for the court to state that a verdict is accepted and order it recorded by the clerk, before the latter makes the final proclamation." The final proclamation refers, of course, to the reading aloud of the jury's verdict by the clerk and his inquiry whether it is the verdict of each of them. The defendant gains nothing by this assignment of error.

The second assignment, that the court erred in denying the motion for mistrial after one juror had announced, during a poll of the jury, a verdict con-

trary to the verdict as previously announced for the jury by their foreman, has already been discussed at length. It is our opinion that it was not mandatory on the court to grant the motion, and that the granting or denial of the motion was within the court's legal discretion. *Bluett* v. *Eli Skating Club,* 133 Conn. 99, 104. Moreover, as appears from the subsequent events, the ruling of the court made possible the ascertainment of the true state of facts, leading to a correct and prompt statement of the verdict after reconsideration. See, for example, *State* v. *Walters,* 145 Conn. 60, 64, appeal dismissed, cert. denied,. 358 U.S. 46; 53 Am. Jur., Trial, § 1019. Furthermore, the ruling on the motion, being interlocutory, could be presented only by a finding, and without such a finding the record does not present any question for our consideration. *State* v. *Williamson,* supra. We have considered the question, however, because it is inseparable from the ruling on the motion in arrest of judgment and the motion to set aside the verdict, both of which motions were properly filed and both were denied. The ruling on the motion to set aside the verdict would have been sufficient to raise the question which is presented to us on the ruling on the defendant's motion for a mistrial. *Aldrich* v. *Duggan,* 107 Conn. 17, 18. The parties, however, during trial and on appeal, have pursued this method of presenting for review the interlocutory rulings made in the course of trial, and we see no reason for exalting technicalities over substance by failing to consider all errors assigned and adequately appearing on the record. *Mendrochowicz* v. *Wolfe,* 139 Conn. 506, 509; Maltbie, Conn. App. Proc. § 126.

The third and fifth assignments may be considered together. Prejudicial error is claimed in the reading by the court of extracts from the approved charge on reconsideration by the jury, as contained

in *State* v. *Smith,* 49 Conn. 376, 386. No question is raised as to the correctness of the court's instructions, but, it is argued, the circumstances then present, after one juror had initially indicated a dissent from the verdict announced, rendered the charge and a reconsideration by the jury improper. No claim is made that after a jury have announced a verdict in which there appears to be a mistake, irregularity, or inconsistency, the jury could not be returned for further consideration, upon proper instructions from the court. The defendant's contention is that the charge given by the court, while appropriate in the event the jury seem to be in disagreement, may not be given after a verdict has been announced which, upon an individual poll, appears to be nonunanimous. Such procedure, the defendant argues, amounted to coercion of the holdout juror and placed great pressure on her to conform to the decision of the other jurors by changing her verdict. This argument assumes as a premise that the juror had made her decision one way when the jury had concluded their deliberations, then changed her mind after the verdict was announced, and later changed it again to what it first was. We cannot accept such premise without some factual foundation to support it, and the record contains none. Although the court was under no necessity of repeating the same charge it had given once before, we cannot find that the defendant was prejudiced thereby. See *State* v. *Bradley,* 134 Conn. 102, 113; *State* v. *Walters,* supra, 63; *State* v. *Mosca,* 90 Conn. 381, 385.

The defendant further claims that the concluding remarks of the court to the jury, to the effect that their verdict must be unanimous, were in error because the jury could disagree and fail to arrive at a verdict. Standing by itself, such instruction might be harmfully inaccurate; but, lacking any exception

to the original charge, we assume that it was correct; and we must conclude that the subject matter regarding jury deliberations was fully covered by the charge. A fortiori, the jury had once before appeared unable to arrive at a unanimous verdict, and we cannot indulge in a presumption that they were ignorant of their deliberative functions and needed further instruction. The defendant also has excepted to the following comment made by the court: "I am sorry. I know it's not a happy lot for any of us at this late hour, but I have to ask the jury again to return to the deliberating room and reconsider their verdict." It is asserted that such an observation could not be reasonably interpreted otherwise than as an expression of dismay by the presiding judge over the decision of a reluctant juror and that this remark tended to hasten consideration of their verdict by the jury, as shown by their rapid return to report what has been referred to as the second verdict.

We cannot agree that the comment of the court on matters observable by everyone then present tended to have or did have any coercive influence on any juror, and the quick return of the jury with the announcement of a unanimous verdict, confirmed by a poll, supports, in our opinion, the evident conclusion of the court that what seemed originally to have been a dissent by one juror was, in fact, only confusion on her part, caused by an unfamiliar procedure. In any event, even if she had first intended to express disagreement with the announced verdict, as she had a right to do, she could upon reconsideration alter her mind and stand on her last decision. Under our practice, it is the last answer that makes the verdict. *Watertown Ecclesiastical Society's Appeal,* 46 Conn. 230, 233; note, 49 A.L.R. 1301; see also *Bino* v. *Veenhuizen,* 141 Wash. 18.

The defendant, in his fourth assignment, claims that the court erred in permitting further deliberation by the jury after arguments were made by the defendant's counsel to the court in the presence of the jury in reference to the verdict that had been announced. We cannot refrain from observing that the colloquy that did take place was precipitated by the defendant himself by pressing his motion for a mistrial in the presence of the jury. Better practice would suggest that counsel should have waited until the poll was completed and then asked that the jury be excused so that a motion on a question of law might be argued. If the defendant neglected to follow the correct procedure, he cannot now complain because of his own neglect. See *Yavis* v. *Sullivan,* 137 Conn. 253, 264.

The sixth assignment of error requires no discussion. It appears that after the final announcement of the verdict, after the jury had returned following reconsideration, the court mistakenly ordered that the verdict be accepted and recorded before the last juror had been polled. Counsel for defendant immediately objected, thereby interrupting the clerk, who was at the point of polling the last juror. The poll was then completed and the court again ordered the verdict to be accepted and recorded. The defendant has cited no authority for the claim he makes that, under the circumstances, there was prejudicial error requiring a new trial. This assertion overlooks the fact that the sole purpose of a poll is to enable counsel to discover whether the verdict is unanimous. Acceptance of the verdict in the mistaken belief that all jurors had expressed themselves, and the immediate correction of the oversight, could not have harmed the defendant. This assignment of error is without merit.

The seventh, eighth and ninth assignments allege error on the part of the court in ordering a pre-

sentence report and reviewing it before the motion in arrest of judgment had been argued, in failing to inform defendant's counsel that preparation of such a report had been ordered, and in failing to provide counsel with a copy of the report before sentencing.

When the defendant was presented for sentence, and after his counsel was heard on the matter of sentence, the court inquired whether counsel was familiar with the defendant's criminal record. Upon his statement that he had not seen a written copy of the defendant's record, the court handed counsel a presentence report. Objection was then made by him on the grounds stated in the foregoing paragraph. Counsel further claimed that he was not given an opportunity to examine and verify the statements in the report before sentence. The court asked whether the defendant needed further time and the answer was in the negative.

The report in this case had been made by the probation officer after a presentence investigation was ordered by the court under the provisions of § 54-109 of the General Statutes. Such investigation and report are not part of the judicial proceedings culminating in a finding of guilt. Their sole purpose is to enable the court, within the limits fixed by statute, to impose an appropriate penalty, fitting the offender as well as the crime. "The court is not held within the narrow limits of the rules observed in a criminal trial. . . . If the court were, most, if not all, of the benefit which can be had from a presentence investigation and report would be lost to the convicted offender and the state, and the legislative purpose of bringing our criminal procedure more completely in harmony with modern concepts of penology would be thwarted." *State* v. *Harmon,* 147 Conn. 125, 128. "The due process clause [of the federal constitutiòn] should not be treated as a

device for freezing the evidential procedure of sentencing in the mold of trial procedure. So to treat the due process clause would hinder if not preclude all courts—state and federal—from making progressive efforts to improve the administration of criminal justice." *Williams* v. *New York,* 337 U.S. 241, 251; see also *Driver* v. *State,* 201 Md. 25, 32; *State* v. *Moore,* 49 Del. 29, 36, both cited in *State* v. *Harmon,* supra, 129.

Neither by statute nor under our rules is there provided any formal procedure concerning the ordering of a presentence investigation and the distribution of the report to, or its examination by, anyone except the presiding judge. The practice generally followed is that upon a finding of guilty the court, where a presentence investigation is indicated, orders that such an investigation be made by the probation officer and a report rendered on a date certain, and the case is then continued for sentence to that date. Because a period of not less than two weeks is usually required for the investigation and report, and in the present case motions were to be heard and decided before further proceedings could be entertained, the court was not required to delay ordering a presentence investigation until after the disposition of the motions. It was its duty to use reasonable caution in order to assure a speedy disposition of the case. The court was not obliged to inform counsel that such an order had been made. Under our practice, if counsel for the defendant wishes to examine a presentence report, he is given the opportunity to do so, in order that he may be able to contradict or correct any inaccurate or untruthful matter contained therein which might prejudice the defendant. The defendant was given this opportunity and declined it. The further suggestion that a review of the report by the court before it heard argument on the pending

motion would tend to influence the court's decision on the motions, to the prejudice of the defendant, is without validity. The motions were confined to questions of law on matters of procedure and did not touch upon the evidence pertaining to the substantive charge. The seventh, eighth and ninth assignments of error are without merit.

The tenth assignment, that the court erred in refusing to grant the motion in arrest of judgment, on the ground that the judgment was not supported by the evidence, we cannot consider. The evidence is not before us. Moreover, this assignment has not been pursued in brief and argument, and we deem it abandoned.

There is no error.

In this opinion KINMONTH and LEVINE, Js., concurred.