## Charles Steadwell *v.* Warden, Connecticut Correctional Institution, Somers

Peters, Parskey, Armentano, Shea and Wright, Js.

Argued November 5, 1981—decision released February 2, 1982

*Jon C. Blue*, for the appellant (plaintiff).

*Patricia M. Strong*, assistant attorney general, with whom on the brief, was *Carl R. Ajello*, attorney general, for the appellee (defendant).

ARMENTANO, J. This case presents a question of first impression in this state concerning the extent to which presentence investigation reports in the possession of the department of correction are subject to disclosure under the Personal Data Act, General Statutes §§ 4-190 to 4-197.

The facts are not disputed. The department of correction (hereinafter DOC) maintains personal data files concerning inmates in its custody. After July 1, 1977, when the Personal Data Act, Public Acts 1976, No. 76-421, § 9 (hereinafter the act) became effective, the plaintiff, an inmate confined at the Connecticut Correctional Institution, Somers, filed a written request with the warden for disclosure of all personal data concerning him maintained by the DOC.[1] Although the record does not reveal the nature of the data disclosed, the presentence investigation reports (hereinafter PSIs) were not disclosed pursuant to DOC policy.[2] Upon this refusal to disclose the plaintiff filed with the

---

[1] Originally nine individual actions were instituted, each by an inmate confined at Somers. The actions were consolidated and tried together, but only the plaintiff Charles Steadwell has appealed from the judgment of the court.

[2] Besides PSIs, several other kinds of data were not disclosed. Among them the plaintiff claims that the court erred in not ordering disclosure of disciplinary and investigatory records maintained by the DOC. It is undisputed that there existed no such records pertaining to the plaintiff. Therefore, this claim of error is not properly before us and we decline to address it.

trial court a timely petition for disclosure of personal data pursuant to General Statutes § 4-195.[3] After a hearing the trial court denied the plaintiff's petition for disclosure,[4] ruling that it is beyond the power of the legislature to make a PSI accessible to the public because Practice Book § 917 provides that a PSI is not a public record. In his appeal from the judgment rendered the plaintiff claims that the act requires the disclosure of PSIs and that this requirement is constitutional.

## I

As a threshold issue the defendant has raised the jurisdiction of this court to address the subject matter of this appeal. The defendant claims that the present case is an administrative appeal and therefore should have been brought to this court by way of a certification for review.

"Appeals from final judgments or actions of the superior court shall be taken to the supreme court ... except for ... administrative appeals as provided for in section 51-197b . . . ." General Statutes § 51-197a. General Statutes § 51-197b, as amended to 1980, provides that appeals from a trial court's

---

[3] General Statutes § 4-195 provides: "PETITION TO COURT FOR FAILURE TO DISCLOSE. If disclosure of personal data is refused by an agency under section 4-194, any person aggrieved thereby may, within thirty days of such refusal, petition the superior court for the county or judicial district in which he resides for an order requiring the agency to disclose the personal data. Such a proceeding shall be privileged with respect to assignment for trial. The court, after hearing and an in camera review of the personal data in question, shall issue the order requested unless it determines that such disclosure would be detrimental to the person or is otherwise prohibited by law."

[4] In denying disclosure the trial court erroneously stated that "[t]he petitioners [sic] appeal is overruled." As discussed infra, a petition brought pursuant to General Statutes § 4-195 is not properly characterized as an appeal.

review of an administrative decision shall be taken to this court only by certification for review.[5] See Practice Book § 3135 (b). The plaintiff filed a direct appeal in the present case. Therefore, the initial issue for resolution is whether this appeal is administrative within the meaning of General Statutes §§ 51-197a and 51-197b.

General Statutes § 4-195 provides that any person aggrieved by a refusal of disclosure may "petition the superior court . . . for an order requiring the agency to disclose the personal data. . . . The court, after hearing and an in camera review of the personal data in question, shall issue the order requested unless it determines that such disclosure would be detrimental to the person or is otherwise prohibited by law." The petition filed under this section seeks an independent determination by the court of whether disclosure is required.[6] The hearing provided is the aggrieved party's first opportunity to contest the issue by presenting evidence.

[5] Section 3 of Public Acts 1981, No. 81-416, effective July 1, 1981, substituted a right of administrative appeal to the Appellate Session of the Superior Court for the previous certification for review to the Supreme Court. The provision further states that "[t]here shall be no right to further review except to the supreme court pursuant to the provisions of section 51-197f of the General Statutes," which provide for further review of Appellate Session determinations by certification to the Supreme Court. General Statutes § 51-197f.

[6] General Statutes § 4-195 creates a right of judicial recourse independent of the provisions of the Uniform Administrative Procedure Act, (hereinafter UAPA) General Statutes §§ 4-166 to 4-189. Although the DOC is an "agency" for purposes of the UAPA; General Statutes §§ 4-166 (1), 4-185, 18-78a (a); disclosure decisions are not "contested cases," because the administrative proceeding pursuant to a disclosure request does not require an opportunity for a hearing according to statute; nor was a hearing in fact held in the present case. General Statutes § 4-166 (2); *Rybinski* v. *State Employees Retirement Commission*, 173 Conn. 462, 469, 378 A.2d 547 (1977).

The agency decision does not result in a record which the trial court may review. See Practice Book §§ 3060P, 3087, 3088. Therefore, the present case is not an administrative appeal subject to the procedural restrictions for further review imposed by General Statutes § 51-197b. Accordingly, a direct appeal was the proper course for review by this court.

## II

The plaintiff claims that the Act requires the disclosure of PSIs. General Statutes § 4-193 (g) provides that "[e]ach agency shall . . . [e]xcept as otherwise provided in section 4-194, disclose to a person, upon written request . . . all personal data concerning him which is maintained by the agency." It is undisputed that the DOC is an agency for purposes of the act.[7] Accordingly, the trial court should have ordered the disclosure of all nonexempt personal data. " 'Personal data' means any information about a person's education, finances, medical or emotional condition or history, employment or business history, family or personal relationships, reputation or character which because of name, identifying number, mark or description can be readily associated with a particular person. 'Personal data' shall not be construed to make available to a person any record described in subdivision (3) of subsection (b) of section 1-19," which pertains to records

---

[7] General Statutes § 4-190 provides in part: "Definitions. As used in this chapter: (a) 'Agency' means each state board, commission, department or officer, other than the legislature, courts, governor, lieutenant governor, attorney general or town or regional boards of education, which maintains a personal data system."

of law enforcement agencies.[8]  General Statutes
§ 4-190 (i).[9]

PSIs result from a presentence inquiry[10] into the
circumstances of the offenses, the attitude of the
victim or his immediate family, the criminal record,
social history and present condition of the defend-

[8] General Statutes § 1-19 provides in part: "ACCESS TO PUBLIC REC-
ORDS. EXEMPT RECORDS. (a) Except as otherwise provided by any
federal law or state statute, all records maintained or kept on file by
any public agency, whether or not such records are required by any
law or by any rule or regulation, shall be public records . . . .

"(b) Nothing in section . . . 1-19 . . . shall be construed to
require disclosure of . . . (3) records of law enforcement agencies
not otherwise available to the public which records were compiled
in connection with the detection or investigation of crime, if the
disclosure of said records would not be in the public interest because
it would result in the disclosure of (A) the identity of informants
not otherwise known, (B) information to be used in a prospective
law enforcement action if prejudicial to such action, (C) investiga-
tory techniques not otherwise known to the general public, or (D)
arrest records of a juvenile, which shall also include any investiga-
tory files, concerning the arrest of such juvenile, compiled for law
enforcement purposes . . . ."

Because PSIs are not connected with the detection or investigation
of a crime; see *State* v. *Gullette*, 3 Conn. Cir. 153, 167, 209 A.2d
529 (1964); this exception to the definition of "personal data" does
not apply to them.

[9] Prior to October 1, 1978, the definition of "personal data"
included criminal history. Section 2 of Public Acts 1978, No. 78-200,
entitled "An Act Concerning Security and Privacy of Criminal His-
tory Record Information as Required by Federal Regulations,"
deleted "criminal history" from General Statutes § 4-190 (i). Section
1 of that act, however, expressly excluded PSI information from the
definition of "criminal history." General Statutes § 54-142g (a).
Accordingly, the amendment of General Statutes § 4-190 (i) between
the time of the plaintiff's request for disclosure and the judgment
rendered by the trial court on November 7, 1978 is of no consequence
in the present case.

[10] The record does not reveal when the plaintiff was sentenced.
The statute providing for PSIs has remained substantially unaltered
since its original enactment in 1955. Between October 1, 1976 and
July 1, 1978, General Statutes § 54-109 (now § 54-91a) provided:

"No defendant convicted of a crime, other than a capital felony,
the punishment for which may include imprisonment for more than

ant, and, if desirable, the mental and physical state of the defendant. General Statutes § 54-91a (formerly § 54-109); Practice Book § 911. "Their sole purpose is to enable the court, within the limits fixed by statute, to impose an appropriate penalty, fitting the offender as well as the crime." *State* v. *Gullette*, 3 Conn. Cir. 153, 167, 209 A.2d 529 (1964). While an inmate is serving his sentence in the custody of the DOC the PSI is part of the master file and is used frequently by the DOC in making decisions affecting the inmate. It is clear from the foregoing that the PSI is personal data maintained[11] by an agency and therefore should be disclosed unless exempted from disclosure.

---

one year, shall be sentenced, or his case otherwise disposed of, until a written report of investigation by a probation officer has been presented to and considered by the court, if (1) the defendant is so convicted for the first time in this state or (2) his record, as shown by the prosecuting official, discloses a conviction obtained prior to three years from the finding of guilty in the present prosecution; but any court may, in its discretion, order a presentence investigation for a defendant convicted of any crime or offense other than a capital felony. Whenever an investigation is required, the probation officer shall promptly inquire into the circumstances of the offense, the attitude of the complainant or victim, or of the immediate family where possible in cases of homicide, and the criminal record, social history and present condition of the defendant. All local and state police agencies shall furnish to the probation officer such criminal records as the probation officer may request. When in the opinion of the court or the investigating authority it is desirable, such investigation shall include a physical and mental examination of the defendant. If the defendant is committed to any institution, the investigating agency shall send the reports of such investigation to the institution at the time of commitment."

Section 5 of Public Acts 1978, No. 78-188, effective July 1, 1978, added "and restitution specialist" after "probation officer" in two places in the third sentence. Section 48 of Public Acts 1980, No. 80-313, effective October 1, 1980, substituted "may" for "shall" in the first sentence and divided the section into two subsections.

[11] For purposes of the act, "maintain" personal data is defined as "collect, maintain, use or disseminate." General Statutes § 4-190 (f).

## III

"If an agency determines . . . that nondisclosure to a person of personal data concerning him is . . . permitted or required by law, the agency may refuse to disclose that personal data, and shall refuse disclosure where required by law." General Statutes § 4-194 (a); see General Statutes § 4-195. The trial court held that Practice Book § 917, which limits postsentencing access to PSIs to certain nonpublic contexts, is a law requiring nondisclosure to the plaintiff. Practice Book § 917 provides that "[t]he presentence investigation report shall not be a public record and shall not be accessible to the public. It shall be available initially to the parties . . . for use in the sentencing hearing and in any subsequent proceedings wherein the same conviction may be involved, and it shall be available at all times to the following: (1) The department of adult probation; (2) The correctional or mental health institution to which the defendant is committed; (3) The board of parole; (4) The board of pardons; (5) The sentence review division of the superior court; (6) The judicial review council; (7) Any court of proper jurisdiction where it is relevant to any proceeding before such court. Such court may also order that the report be made available to counsel for the parties for the purpose of such proceeding; (8) Counsel for the defendant and the prosecuting authority during negotiations relating to other offenses pending against the defendant or subsequently charged against him; and (9) Counsel for the defendant in a sentence review hearing or habeas corpus proceeding upon counsel's request to the department of adult probation." This provision protects the defendant, the plaintiff herein,

by maintaining the nonpublic character of the PSI, but permits the defendant; see Practice Book §§ 915, 917; access to the report in the broad class of "subsequent proceedings wherein the same conviction may be involved," as well as in plea bargaining concerning other offenses.[12] See Orland, Connecticut Criminal Procedure § 2328. The trial court ruled that the act cannot permit "public review" of PSIs by the plaintiff because no statute can supersede a court rule in controlling the judicial department in the performance of its duties. See *State* v. *Clemente,* 166 Conn. 501, 510–11, 516, 353 A.2d 723 (1974); *State Bar Assn.* v. *Connecticut Bank & Trust Co.,* 145 Conn. 222, 232, 140 A.2d 863 (1958). The implication of this ruling is that the act, in permitting "public" disclosure, violated the separation of powers provided by the constitution of Connecticut, article second.

Disclosure under the act does not result in public review of PSIs. It permits access to a person only

[12] The defendant also has access to his PSI prior to sentencing. Practice Book § 915 provides that "[t]he presentence investigation report shall be provided to the judicial authority, and copies thereof shall be provided to the prosecuting authority and to the *defendant* or his counsel in sufficient time for them to prepare adequately for the sentencing hearing, and in any event, no less than twenty-four hours prior to the date of the sentencing. Upon request of the defendant, the sentencing hearing shall be continued for a reasonable time if the judicial authority finds that the defendant or his counsel did not receive the presentence investigation report within such time." (Emphasis added.)

One purpose of providing a copy of the PSI to the defendant or his counsel before sentencing is to review the accuracy of the information contained therein. See General Statutes § 54-91b (formerly § 54-109a); *State* v. *Harmon,* 147 Conn. 125, 129, 157 A.2d 594 (1960). Before sentencing the trial court must hear motions addressing the accuracy of the PSI. General Statutes § 54-91b. The defendants have not advanced any policy reason for distinguishing access to a PSI after sentencing from access before sentencing for purposes of determining its accuracy.

for the purpose of his reviewing the accuracy of personal data pertaining to him which is maintained by an agency. See General Statutes § 4-193. Accordingly, the plaintiff's access to the PSI pertaining to him does not violate Practice Book § 917 insofar as it forbids public disclosure of PSIs. The other provisions of Practice Book § 917, however, if applicable to these circumstances, would preclude the plaintiff's access to his PSI because disclosure of the PSI on file at the DOC is not within the categories of permitted access set forth in Practice Book § 917.

The Superior Court is empowered to adopt and promulgate rules "regulating pleading, practice and procedure in judicial proceedings in courts in which they have the constitutional authority to make rules, for the purpose of simplifying proceedings in the courts and of promoting the speedy and efficient determination of litigation upon its merits. Such rules shall not abridge, enlarge or modify any substantive right . . . ." General Statutes § 51-14 (a). The act creates a substantive right of access to personal data maintained by agencies which does not encroach upon the operation or structure of the courts. Just as the general assembly lacks the power to enact rules governing procedure that is exclusively within the power of the courts; Conn. Const., art. V § 1; *State* v. *Clemente,* supra, 510–11, 516; so do the courts lack the power to promulgate rules governing substantive rights and remedies. General Statutes § 51-14 (a); *State* v. *Clemente,* supra, 509-10; see *State* v. *Rodriquez,* 180 Conn. 382, 385–86, 429 A.2d 919 (1980). Additionally the court rules themselves are expressly limited in scope to practice and procedure in the Superior Court; Practice Book § 1; and do not purport to reach beyond

such limits. Although a PSI is prepared under the authority of the courts, after a PSI is transferred to DOC files for its use, the PSI ceases to be a court record and the courts' power to govern disclosure ceases. Therefore, Practice Book § 917 cannot constitutionally and does not purportedly operate to preclude disclosure of PSIs that is otherwise permitted under the Act.[13]

There is error; the judgment is set aside and the case is remanded with direction to render judgment in accordance with this opinion.

In this opinion PETERS and PARSKEY, Js., concurred.

SHEA, J. (dissenting). The issue here is not one of confrontation between the constitutional powers of the judiciary and the legislature but simply of legislative intention. It must be borne in mind that when the Personal Data Act became effective on July 1, 1977,[1] the restrictions upon disclosure of the PSI established by Practice Book, 1978, § 917 were already in place.[2] The provision of § 4-194 (a) that an agency may refuse to disclose personal data to a person where such "nondisclosure . . . is otherwise permitted or required by law . . . and shall refuse disclosure when required by law" certainly indicates no desire to override any authoritatively issued restriction upon access to such information existing at the time that enactment became effective. The common meaning of "law" includes "a rule . . . that is prescribed or formally recognized as bind-

---

[13] Because we hold that Practice Book § 917 cannot require nondisclosure of personal data under the Act, we need not address the plaintiff's additional claim that the Rules of Practice are not "law" generally and within the meaning of General Statutes § 4-194 (a).

[1] Public Acts 1976, No. 76-421, § 9.

[2] Practice Book, 1963, § 2328 (effective October 1, 1976).

ing by a supreme controlling authority or is made obligatory by a sanction . . . made, recognized, or enforced by the controlling authority." Webster, Third New International Dictionary; see *Water Commissioners* v. *Curtis,* 87 Conn. 506, 509, 89 A. 189 (1913). Unquestionably the rules of practice fall within this definition since they have not only a statutory but a constitutional basis. *State* v. *Clemente,* 166 Conn. 501, 514, 353 A.2d 723 (1974); *In re Appeal of Dattilo,* 136 Conn. 488, 492, 72 A.2d 50 (1950). In its plural form, "laws," the word has sometimes been employed more narrowly to refer only to legislative enactments, i.e., "statutes." *Water Commissioners* v. *Curtis,* supra, 509. It is improbable that this more limited meaning was intended by the use of the word in its singular form because in § 4-192 (c) (Rev. to 1979), another section of the Personal Data Act which was enacted at the same time[3] as § 4-194 (a) but has since been repealed,[4] the phrase "authorized by statute" was used to describe a circumstance in which consent would not be required for the disclosure of personal data. "It is a familiar principle of statutory construction that where the same words are used in a statute two or more times they will ordinarily be given the same meaning in each instance." *State ex rel. Hyde* v. *Dowe,* 129 Conn. 266, 271, 28 A.2d 12 (1942). It is a logical corollary that the use of different words in the same enactment must indicate a difference in legislative intention. *Fritz* v. *Madow,* 179 Conn. 269, 272, 426 A.2d 268 (1979). The exclusion carved out of the Personal Data Act for legally authorized nondisclosure provisions must, therefore, be taken to encompass any nondisclosure sanctioned by a rule of practice unless the rule itself is invalid.

[3] Public Acts 1976, No. 76-421, §§ 3, 7, 9.

[4] Public Acts 1979, No. 79-538, § 2.

The majority professes (see footnote 13, supra) to have avoided the necessity of deciding whether the rules of practice are "law" as that word is used in § 4-194 by taking the route that the provisions of Practice Book § 917, which effectively prevent the plaintiff from obtaining a copy of his PSI from the prison authorities, are invalid, because they conflict with the substantive right to do so created by the Personal Data Act. This rationale is a classic example of question begging, argumentum in orbem. It assumes the very point at issue, whether the legislature intended that a prisoner should have a right to examine his PSI when its disclosure is prohibited by a rule of practice. This assumption is then employed to declare the rule invalid insofar as it denies the substantive right of access purportedly created by the statute on the ground that a rule of practice cannot modify such a right.

Unless § 917 exceeds the judicial power, both statutory and constitutional, to adopt rules of practice, it is "law" and its restrictions upon availability of the PSI must have been accepted by the legislature in the exclusion created by § 4-194 (a) from the Personal Data Act requirements. "[C]ourts have an inherent power, independent of statutory authorization, to prescribe rules to regulate their proceedings and facilitate the administration of justice as they deem necessary." *State* v. *Clemente,* supra, 514. It was in the exercise of this power that the judges of the Superior Court adopted § 917 in 1976 as part of a major revision of the rules of criminal procedure.[5] The purpose of the restrictions upon access to the PSI was not only to protect the privacy of the defendant in a criminal case but

[5] Practice Book, 1963, § 2328, adopted June 7, 1976, to take effect October 1, 1976; Orland, Connecticut Criminal Procedure § 2328.

also to protect the identity of the sources interviewed by the probation officers in preparing their reports and the content of communications they often received in confidence. That the protection of sources was a significant factor in the adoption of the rule is indicated by the provisions for delivering a copy of the report to the "defendant *or* his counsel" (emphasis added), and also those for the return of all such copies and against duplication thereof. Practice Book §§ 915, 916. The alternative formulation follows the statute; General Statutes § 54-91b; and seems to have been designed to accommodate the few defendants who act without counsel in serious criminal matters where a PSI is required. See General Statutes § 54-91a. For the remainder the judges as well as the legislature have chosen to rely upon the discretion of counsel not to reveal to his client confidential source information which might provoke reprisals. The wisdom of this policy is not before us at this time.

The majority opinion does not question the power of the judges to adopt the prohibitions against public access to the PSI under their authority to "facilitate the administration of justice." Only the restriction upon a defendant's access after his PSI comes into the possession of the institution to which he has been committed is found to be invalid. The portion of Practice Book § 917 allowing correctional or mental health institutions to receive a copy of the report for an inmate committed to their custody was inserted to conform the rule to General Statutes § 54-91a which contains a similar provision. This accommodation of the legislative will by the judiciary can hardly be given the effect of invalidating restrictions upon disclosure which would otherwise come within the judicial power. The legislature

deliberately excluded "courts" from the definition of "agency" to which the Personal Data Act applies. General Statutes § 4-190 (a). The plaintiff, therefore, could not obtain a copy of his PSI unless it had been transmitted to the correctional institution holding him pursuant to the provisions of § 917 adopted in deference to § 54-91a. It is paradoxical that this provision, included in § 917 to avoid a conflict between the rule and the statute, has been deemed by the majority to infect the disclosure restrictions established by the rule with the fatal virus of invalidity. This result is especially ironical when the legislature has expressly excluded legally sanctioned nondisclosure from the operation of the Personal Data Act. For these reasons, I dissent.

In this opinion WRIGHT, J., concurred.