STATE OF CONNECTICUT *v.* WARREN PATTERSON
(10752)
(10855)

O'CONNELL, LAVERY and LANDAU, Js.

Argued December 1, 1994—decision released May 16, 1995

*David M. Cohen,* with whom, was *Gregory J. Williams,* for the appellant (defendant).

*James M. Ralls,* assistant state's attorney, with whom, on the brief, were *Eugene Callahan,* state's attorney, and *Carol Dreznick,* assistant state's attorney, for the appellee (state).

LANDAU, J. This matter is currently before us on remand from our Supreme Court. *State* v. *Patterson,* 230 Conn. 385, 645 A.2d 535 (1994). In this consolidated appeal, the defendant appeals from a judgment of conviction, rendered after a jury trial, of possession of marijuana with intent to sell in violation of General Statutes § 21a-277 (b)[1] and a judgment of revocation of proba-

---

[1] General Statutes § 21a-277 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with intent to sell or dispense, possesses with intent to sell or dispense, offers, gives or administers to another person any controlled substance, except a narcotic substance, or a hallucinogenic substance other than marijuana, except as authorized in this chapter, may, for the first offense, be fined not more than twenty-five thousand dollars or be imprisoned not more than seven

tion. The defendant was also charged with possession of marijuana in violation of General Statutes § 21a-279 (c), but was acquitted of that charge. In *State* v. *Patterson*, 31 Conn. App. 278, 624 A.2d 1146 (1993), rev'd, 230 Conn. 385, 645 A.2d 535 (1994), we reversed both judgments of the trial court. The Supreme Court granted certification, reversed our judgment and remanded the case for our consideration of the defendant's remaining claims. The defendant claims that the trial court improperly (1) sustained the state's peremptory challenge of an African-American venireperson, (2) failed to suppress an inculpatory statement made by the defendant to the police, and (3) failed to follow certain procedural rules when sentencing the defendant.[2]

I

The defendant, who is African-American, first claims that the trial court improperly concluded that the state did not discriminatorily employ a peremptory challenge to exclude an African-American venireperson from the jury in violation of *Batson* v. *Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).[3]

---

years or be both fined and imprisoned; and, for each subsequent offense, may be fined not more than one hundred thousand dollars or be imprisoned not more than fifteen years, or be both fined and imprisoned."

[2] We do not address the following claims inasmuch as they have been decided by this court. The trial court improperly (1) failed to set aside legally inconsistent verdicts; *State* v. *Patterson*, supra, 31 Conn. App. 305; (2) failed to suppress the fruits of a search of the defendant's vehicle; id., 310; and (3) failed to follow certain procedural rules in revoking the defendant's outstanding probation. Id., 312. As to the last claim, the Supreme Court noted that this court's remand for a new probation revocation hearing was not within its certified questions and, therefore, was not directly affected by its disposition of the appeal. *State* v. *Patterson*, supra, 230 Conn. 387 n.2.

[3] The defendant states that his claim is based on *Batson* because the contours of the state constitutional right have not yet been delineated. Nonetheless, he asserts that a greater burden of justification for its peremptory challenges is placed on the state by the fair cross-section requirement of article first, §§ 1 and 8, of the Connecticut constitution, in that the defendant

The following facts are relevant to our analysis. The jury selection in this case occurred on October 3 and 4, 1991. The trial judge, without objection from either party, chose not to be present during these proceedings. Counsel for the parties examined twenty-three venirepersons, from which six jurors and two alternates were chosen. Five venirepersons were excused by the trial court for cause, seven were excused by the defendant, and three by the state.

There were three African-American venirepersons in the panel. The state exercised peremptory challenges to excuse the first two African-American panel members questioned. On the state's second peremptory challenge, which it used to excuse venireperson Barbara Dereff, the defendant made a *Batson* challenge. The trial judge reentered the courtroom and the defendant argued that the state's two successive peremptory challenges to prospective African-American jurors and Dereff's impartiality, demonstrated by her testimony, indicated a *Batson* violation. The trial judge asked the prosecutor whether she had neutral reasons for excusing Dereff. The prosecutor replied that "[b]ased on one of the questions where asked if she makes up her mind, does she listen to other people—it was the impression that I got that she—once she makes up her mind, she

need not show that the prosecutor's exclusionary practice has been intentional. See *State* v. *Castonguay*, 194 Conn. 416, 421, 481 A.2d 56 (1984). Thus, he claims that, "if the prosecutor's conduct has run afoul of the *Batson* standards, a fortiori the defendant's rights to a fair cross-section jury panel under article first, §§ 1 and 8, have been infringed." Because the defendant makes this claim without adequate analysis under the state constitution; see *State* v. *Geisler*, 222 Conn. 672, 685, 610 A.2d 1225 (1992) (analysis should include examination of [1] text of constitutional provisions, [2] state case law interpreting provisions, [3] federal precedent, [4] precedent of other jurisdictions, [5] historical factors, and [6] economic or sociological considerations); and because he fails to give any reasoned explanation of the logic behind his position, we decline to review the defendant's state constitutional contention. See *State* v. *Ephraim*, 28 Conn. App. 306, 309 n.4, 610 A.2d 1320, cert. denied, 223 Conn. 925, 614 A.2d 828 (1992).

makes up her mind and doesn't listen to what anybody
else has to say when she goes straight into the jury
room." The trial court then requested to hear the tape
recording of the state's questions and Dereff's replies
regarding the issue.[4] After listening to the tape record-
ing, the trial court ruled: "I've listened to what the juror
said and I agree with the state—that the state had a
legitimate motive and reason for excusing this juror.
It has nothing to do with the juror's race, color or
creed." The defendant took an exception and the judge
returned to his chambers.

"*Batson* established the guidelines for evaluating a
criminal defendant's claim that the state's exercise of
a peremptory challenge was based on purposeful racial
discrimination." *State* v. *Holloway*, 209 Conn. 636, 640,

---

[4] The relevant colloquy between the prosecutor and Dereff was as follows:
"Q. If you went into the jury deliberation room and when you walk in,
each of you have an opinion as to the evidence in the case. You take a vote
and it's five to one. You're that one holdout juror. Are you the type of per-
son who wants to hear what everybody has to say, and if you feel that you've
missed something, you would be able to listen to what other people say
and change an opinion, or are you the type of person that once you reach
a conclusion, you don't want to hear anything and that's it?
"A. Once I reach my conclusion?
"Q. Right.
"A. Yes.
"Q. Once you reach your conclusion, you don't want to hear what any-
body else has to say?
"A. No.
"Q. No?
"A. I don't want to hear what nobody else has to say because I have to
decide for myself."
The trial judge did not listen to the defendant's subsequent questions to
Dereff on the same topic, which revealed the following:
"Q. Ms. Dereff, just on this last point . . . . When you reach a conclu-
sion, you're going to have reached a conclusion; am I correct?
"A. Right.
"Q. Are you going to listen to what the other jurors have to say?
"A. Sure, I would listen.
"Q. Yes. And you'll discuss it; you'll have an open mind?
"A. Sure. I will listen to what they have to say."

553 A.2d 166, cert. denied, 490 U.S. 1071, 129 S. Ct. 2078, 104 L. Ed. 2d 643 (1989); see *State* v. *Gonzalez*, 206 Conn. 391, 394–95, 538 A.2d 210 (1988). A defendant who alleges that he has been the victim of purposeful racial discrimination in the use of a peremptory challenge carries the ultimate burden of persuasion. *Batson* v. *Kentucky*, supra, 476 U.S. 94 n.18. "Once the defendant has established a prima facie case of purposeful racial discrimination, the burden shifts to the state to advance a neutral explanation for the venireperson's removal. . . . The defendant is then afforded the opportunity to demonstrate that the state's articulated reasons are insufficient or pretextual." *State* v. *Holloway*, supra, 641. "Since the trial judge's findings in the context under consideration here largely will turn on evaluation of [the prosecutor's] credibility . . . a trial court's determination that there has or has not been intentional discrimination is entitled to appropriate deference upon review on appeal." (Citation omitted; internal quotation marks omitted.) Id., quoting *State* v. *Gonzalez*, supra, 395. Therefore, we may overrule the trial court's conclusion only if we determine that it was clearly erroneous.

In *Holloway*, our Supreme Court departed from *Batson* to the extent that it held that an accused does not have to first make out a prima facie case to be entitled to an explanation from the state. The court in *Holloway* stated that rather than deciding, based on the existence of a prima facie case, whether an accused is entitled to an explanation of the prosecutor's use of peremptory challenges, "the better course to follow would be to hold a *Batson* hearing on the defendant's request whenever the defendant is a member of a cognizable racial group and the prosecutor exercises peremptory challenges to remove members of the defendant's race from the venire." (Internal quo-

tation marks omitted.) *State* v. *Holloway,* supra, 209 Conn. 646 n.4, quoting *State* v. *Jones,* 293 S.C. 54, 57–58, 358 S.E.2d 701 (1987).

"The ultimate decision as to whether the defendant has successfully demonstrated that the prosecution has used their peremptory challenges in a racially discriminatory manner rests with the trial court. *Batson* v. *Kentucky,* supra, [476 U.S.] 96–97. In deciding whether the defendant has made the requisite showing, or if the prosecution's explanation is neutral or merely pretextual, the trial court should consider all relevant factors and circumstances. Id. A neutral explanation 'means an explanation based on something other than the race of the juror. At this step in the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.' *Hernandez* v. *New York,* 500 U.S. 352, 360, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991). If the prosecutor's reason, however, is 'without regard to the particular circumstances of the trial or the individual responses of the jurors, [it] may be found by the trial judge to be a pretext for racial discrimination.' Id., 371–72; see also *State* v. *Jones,* 29 Conn. App. 304, 331–32, 615 A.2d 149 (1992). The factors that might be used to determine pretext have been discussed by our appellate courts. See *State* v. *Smith,* [222 Conn. 1, 6, 608 A.2d 63, cert. denied, 506 U.S. 942, 113 S. Ct. 383, 121 L. Ed. 2d 293 (1992)]; *State* v. *Gonzalez,* supra, [206 Conn. 391]; *State* v. *Jones,* supra, 29 Conn. App. 329 (*Norcott, J.,* dissenting). 'These include whether the prosecutor's reasons are related to the case or are based on a group bias inapplicable to the prospective juror; whether the prosecutor questioned the juror, did so only perfunctorily, or asked questions not asked of other jurors so as to elicit a particular response; whether jurors of different races but similar characteristics were treated differently; and whether a dis-

proportionate number of peremptory challenges were used to strike from the venire members of one particular race.' *State* v. *Jones*, supra, 332; *State* v. *Gonzalez*, supra, 399. In *Hernandez* v. *New York*, supra, [352] the United States Supreme Court stated that 'invidious discriminatory purpose may often be inferred from the totality of the relevant facts. . . .' As Justice Norcott noted in his dissent in *State* v. *Jones*, supra, 334, 'the most basic element in any determination of whether there was purposeful discrimination is the voir dire proceedings themselves.' See also *Gomez* v. *United States*, [490 U.S. 858, 874–75, 109 S. Ct. 2237, 104 L. Ed. 2d 923 (1989)]." *State* v. *Patterson*, supra, 31 Conn. App. 290–92.

In this case, the trial court determined that the state's explanation of its peremptory challenge was facially valid. The court concluded that the explanation concerned the individual response of the juror and had "nothing to do with the juror's race, color or creed." The state's justification was couched in terms of a "holdout" claim; that is, that Dereff would not listen to what any other juror had to say during deliberations. The defendant argues that Dereff subsequently testified, in response to his questioning, that she would, in fact, listen to other jurors. The state was certainly free to accept Dereff's first statement and discount her testimony on the defendant's rehabilitation. We conclude that the trial court's evaluation of the prosecutor's credibility and its finding that a neutral explanation existed for Dereff's removal was not clearly erroneous.[5]

---

[5] On appeal, much of the defendant's argument is based on factual allegations concerning the race of members of the venire, jury, witnesses and others. He contends that one of the other venirepersons excused by the state was African-American; that there were a total of three African-Americans questioned; that there were three Caucasian jurors who responded similarly to Dereff; that the judge, prosecutor, and all seven state witnesses were Caucasian; and that all three of the principal defense wit-

The defendant also claims that the trial court's ruling was improper because the court ruled on the merits of the *Batson* challenge immediately after listening to the state's explanation of its peremptory challenge. He asserts that it was incumbent upon the trial court to afford him an opportunity to demonstrate that the state's explanation was insufficient or pretextual.

In *State* v. *Patterson*, supra, 230 Conn. 393, our Supreme Court concluded that "because the defendant can waive one of the primary rights protected by judicial supervision of the entire voir dire, namely, his equal protection right against discriminatory peremptory challenges, the defendant can also waive the right to judicial supervision over the voir dire process itself." It follows that the defendant can waive part of the process intended to protect his equal protection right, that is, his opportunity to demonstrate that the state's neutral explanation of its peremptory challenge is in fact pretextual.

The *Patterson* court also held that, in such circumstances, "waiver can be made by counsel, and it will ordinarily be inferred from the absence of an objection." Id., 396. In this case, the record indicates that defense counsel took an exception to the trial court's ruling that the defendant's *Batson* claim was without

---

nesses were African-American. These facts are unsupported by the record in that they cannot be discerned from the audiotape of the proceedings and the trial court, who was not present during the jury selection, was not in a position to make such findings.

These facts, however, tend to support the defendant's argument that the state's proffered neutral explanation was in fact pretextual. The trial court determined that the state's explanation was facially valid. Because the defendant did not then argue at the *Batson* hearing that the explanation was pretextual, the court did not rule on that issue. Having determined that the trial court's threshold conclusion of facial validity was not clearly erroneous, we need not review the defendant's claim of pretext, which is raised for the first time on appeal. Consequently, whether the facts on which the defendant relies for his pretext argument are supported by the record is irrelevant to our analysis.

merit. There is no indication, however, that defense counsel objected to the court's failure to afford him an opportunity to respond to the state's neutral explanation. Nor does the record reflect that defense counsel requested such an opportunity. We conclude, therefore, that the defendant waived his right to respond to the state's explanation of its peremptory challenge.

## II

The defendant next claims that the trial court improperly failed to suppress an inculpatory oral statement made by him during a custodial interrogation. He argues that the state failed to meet its burden of establishing that he waived his constitutional privilege against self-incrimination, as required by *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Prior to trial, the defendant filed a motion to suppress the statement. A hearing was conducted, at which the state offered the testimony of Officer Teresa Czarnecki and Sergeant Richard Caldwell of the Stamford police department. The defendant was also questioned about the circumstances leading to his making the incriminating statement. "On appeal, in order to determine whether the defendant's constitutional rights have been infringed, we review the record in its entirety and are not limited to the evidence before the trial court at the time the ruling admitting the statements was made." *State* v. *Toste*, 198 Conn. 573, 576, 504 A.2d 1036 (1986).

The following facts were elicited at the suppression hearing. The defendant was arrested on May 10, 1991, after being the subject of surveillance by the Stamford police CO-PACT squad, a unit specializing in narcotics enforcement. Caldwell arrested the defendant and, at that time, informed the defendant of his constitutional rights. A search of the defendant and his car produced

bags of marijuana, $1614 and a beeper. The defendant, who indicated that he understood his rights, was then transported to police headquarters for processing.

At the police station, Czarnecki read the provisions of a standard notification of rights form to the defendant, who had requested that the form be recited to him rather than reading it himself. Czarnecki read the form verbatim and, after each section, asked the defendant if he understood. The defendant responded each time that he did understand his rights. When Czarnecki finished reading, the defendant signed the form.

During the arrest and booking process, the defendant was coherent, displaying no abnormalities in his speech, gait or conduct. The officers detected no odor on his breath. He indicated no difficulty understanding the officer's questions and was not handcuffed during the booking process.

After the defendant was read his rights, Caldwell inquired as to where he had obtained the marijuana. The defendant answered that he had bought a quarter pound in New York for $300 and had brought it back to Connecticut to sell. When asked about the $1614 found on his person, the defendant responded that he recently cashed a check at his credit union to pay rent and bills.

The defendant testified that he had been arrested on two prior occasions for marijuana possession and was on probation for possession with intent to sell. He had signed a similar notice of rights form previously and knew of his right not to incriminate himself. He claimed that Caldwell had not questioned him after he had been read his rights and that he had never stated that he obtained the marijuana in New York.

After the hearing, the trial court denied the motion to suppress, finding the testimony of the police offi-

cers "more credible than the uncorroborated denial by the accused."

On appeal, the defendant asserts that the inculpatory statement was the result of a custodial interrogation; that is, his statement was made when he was in police custody and it was in response to questioning that was reasonably likely to elicit an incriminating response.[6] See *Rhode Island* v. *Innis,* 446 U.S. 291, 301, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980). He does not claim, however, that he received inadequate constitutional warnings from the officers. He argues instead that the state failed to prove by a preponderance of the evidence that he knowingly and intelligently waived his right to silence by his course of conduct.

" 'In order to show that the defendant waived his privilege against self-incrimination, the state must prove by a preponderance of the evidence that he knowingly and intelligently waived his constitutional right to remain silent. *State* v. *Alfonso,* 195 Conn. 624, 628, 490 A.2d 75 (1985); *State* v. *Perry,* 195 Conn. 505, 516 n.8, 488 A.2d 1256 (1985).' *State* v. *Aversa,* 197 Conn. 685, 695, 501 A.2d 370 (1985); see *Miranda* v. *Arizona,* supra [384 U.S. 436]. 'The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case.' *North Carolina* v. *Butler,* 441 U.S. 369, 373, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979); *State* v. *Frazier,* 185 Conn. 211, 226, 440 A.2d 916 (1981), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73 L. Ed. 2d 1375 (1982). '[T]he question of waiver must be determined on "the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson* v. *Zerbst,* 304

---

[6] At the suppression hearing, the defendant denied that he had been questioned by Caldwell after having been read his rights. He also denied having made the inculpatory statement. On appeal, however, he admits that "[t]he statement clearly stems from custodial interrogation . . . ."

U.S. 458, 464 [58 S. Ct. 1019, 82 L. Ed. 1461 (1938)].' *North Carolina* v. *Butler*, supra, 374–75. The issue of waiver is factual, 'but our usual deference to the finding of the trial court on questions of this nature is qualified by the necessity for a scrupulous examination of the record to ascertain whether such a finding is supported by substantial evidence. *Culombe* v. *Connecticut*, 367 U.S. 568, 605, 81 S. Ct. 1860, 6 L. Ed. 2d 1037 (1961).' *State* v. *Frazier*, supra, 219.

"Whether the defendant has 'knowingly and intelligently waived' his rights under *Miranda* depends in part on the competency of the defendant, or, in other words, on his ability to understand and act upon his constitutional rights. See *Tague* v. *Louisiana*, 444 U.S. 469, 469–70, 100 S. Ct. 652, 62 L. Ed. 2d 622 (1980); *Fare* v. *Michael C.*, 442 U.S. 707, 725, 99 S. Ct. 2560, 61 L. Ed. 2d 197, reh. denied, 444 U.S. 887, 100 S. Ct. 186, 62 L. Ed. 2d 121 (1979); see generally 1 LaFave & Israel, Criminal Procedure (1984) § 6.9 (b). Factors which may be considered by the trial court in determining whether an individual had the capacity to understand the warnings include the defendant's experience with the police and familiarity with the warnings . . . his level of intelligence, including his IQ . . . his age . . . his level of education . . . his vocabulary and ability to read and write in the language in which the warnings were given . . . intoxication . . . his emotional state . . . and the existence of any mental disease, disorder or retardation." (Citations omitted.) *State* v. *Toste*, supra, 198 Conn. 579–81.

Reviewing the record in this case in light of those factors, we find that the state has met its burden of showing that the defendant had the capacity to understand the meaning of his constitutional rights. The defendant is an adult and, having been arrested several times previously, was familiar with police proce-

dures. He had no difficulty communicating with the officers and indicated on multiple occasions that he understood his rights. Although the state offered testimony indicating that the defendant could not read the notification of rights form read to him by Czarnecki, there was no testimony that would cast doubt on the defendant's ability to understand the meaning of the *Miranda* warnings. There was no evidence that the defendant was intoxicated at the time he made the incriminating statements; in fact, the testimony established that the defendant was not intoxicated. There was also no evidence that the defendant's emotional state impaired his ability to understand his rights. In fact, on appeal, the defendant does not contest the fact that he had the ability to understand and act on his constitutional rights.

" 'Waiver is not conclusively established by demonstrating that *Miranda* warnings were given and understood. *State* v. *Wilson*, [183 Conn. 280, 284, 439 A.2d 330 (1981)]; see *United States ex rel. Abubake* v. *Redman*, 521 F. Sup. 963, 975 (D. Del. 1981). . . .' *State* v. *Aversa*, supra, [197 Conn.] 695, quoting *State* v. *Harris*, [188 Conn. 574, 579–80, 452 A.2d 634, cert. denied, 460 U.S. 1089, 103 S. Ct. 1785, 76 L. Ed. 2d 354 (1982)]. 'In the absence of an express waiver, the state bears the heavy burden of demonstrating, as a matter of fact, that "waiver can be clearly inferred from the actions and words of the person interrogated." *North Carolina* v. *Butler*, supra, [441 U.S.] 373.' *State* v. *Harris*, supra, 580." *State* v. *Toste*, supra, 198 Conn. 582.

A review of the record in this case reveals that there was substantial evidence that the defendant, through his actions and words, waived his right to remain silent. After having been fully apprised of his rights, the defendant was asked where he obtained the marijuana and the $1614. The evidence established that he was

not coerced into responding; the officers made no promises or threats. The defendant was not handcuffed at the time, nor was he under the influence of any drug or emotional strain. His responses to Caldwell's questions were forthright and detailed. Because he was admittedly familiar with police procedure, the defendant may be presumed to know the consequences of responding to the officers after he was advised of his *Miranda* rights. "[T]he [*Miranda*] warning conveys the relevant information and thereafter the suspect's choice whether to exercise his privilege to remain silent should ordinarily be viewed as an act of free will." (Internal quotation marks omitted.) *Ahmad* v. *Redmand*, 782 F.2d 409, 413 (3d Cir. 1986). The defendant "never expressed any desire to remain silent or that the officers stop asking him questions." *State* v. *Aversa*, supra, 197 Conn. 696. " 'Under these circumstances, the defendant's expressed willingness to speak constituted an explicit affirmative act evidencing waiver . . . .' " *State* v. *Toste*, supra, 198 Conn. 583, quoting *State* v. *Harris*, supra, 188 Conn. 580. We therefore conclude that the trial court properly admitted the defendant's inculpatory statement.

## III

In his last claim, the defendant argues that the trial court improperly failed to follow certain procedural rules when sentencing him for his conviction pursuant to General Statutes § 21a-277 (b). The defendant asserts that the trial court improperly sentenced him in that it failed (1) to order and have available a presentence investigation (PSI) in violation of Practice Book § 910,[7] (2) to afford him an opportunity to be heard or to present evidence in violation of Practice

---

[7] Practice Book § 910 (a) provides: "If the defendant is convicted of a crime other than a capital felony, the punishment for which may include imprisonment for more than one year, the judicial authority shall order a presentence investigation, or the supplementation of any existing presen-

Book § 919 (1),[8] (3) to allow him to make a personal statement or to present mitigating evidence in violation of Practice Book § 919 (3),[9] (4) to announce a reason for the sentence in violation of Practice Book § 919 (6),[10] (5) to allow the state an opportunity to review its files so as to comply with its obligation to disclose to the court information favorable to the defendant as required by Practice Book § 921,[11] and (6) to provide the defendant's counsel an opportunity to review medical reports and records or to supply supplemental documentation.

The state asserts that the defendant did not raise these claims before the trial court and that, therefore, the claims are not reviewable on appeal. See Practice Book § 4185. In addition, the state argues that the

tence investigation report. The judicial authority may, in his or her discretion, order a presentence investigation for a defendant convicted of any crime or offense.

"A defendant who is convicted of a crime and is not eligible for sentence review pursuant to Gen. Stat., § 51-195 may, with the consent of the sentencing judge and the prosecuting authority, waive the presentence investigation."

[8] Practice Book § 919 (1) provides that, during a sentencing hearing, "[t]he judicial authority shall afford the parties an opportunity to be heard and, in his discretion, to present evidence on any matter relevant to the disposition, and to explain or controvert the presentence investigation report, the alternate incarceration assessment report or any other document relied upon by the judicial authority in imposing sentence."

[9] Practice Book § 919 (3) provides: "The judicial authority shall allow the defendant a reasonable opportunity to make a personal statement in his own behalf and to present any information in mitigation of the sentence."

[10] Practice Book § 919 (6) provides: "In cases where sentence review is available, the judicial authority shall state on the record, in the presence of the defendant, the reasons for the sentence imposed."

[11] Practice Book § 921 provides: "The prosecuting authority shall inform the judicial authority of the offenses for which the defendant is to be sentenced and shall give a brief summation of the facts relevant to each offense. He shall disclose to the judicial authority any information in his files that is favorable to the defendant and relevant to sentencing. He shall state the basis for any recommendation which he chooses to make as to the appropriate sentence."

defendant does not seek review pursuant to *Evans-Golding*[12] or the plain error doctrine.

As to his first claim, regarding the absence of a PSI, the defendant asserts in his reply brief that the claim was preserved when he filed a motion to vacate the sentence on October 15, 1991. While not ruling on the validity of this assertion, we will assume that the defendant's first claim is preserved. The gravamen of the defendant's argument is that, pursuant to Practice Book § 910, a PSI is mandatory for all noncapital felonies.[13]

The following facts provide a context for our analysis of this claim. Immediately following the verdict, the trial court excused the jury and stated its intention to impose a sentence at that time. The defendant's counsel made an oral motion for a one week continuance "for the defendant to get certain affairs in order" and in order "to file motions." Shortly after the court denied this motion, counsel reiterated his request asserting, "I'm going to ask again for a short continuance. If not a week, Your Honor, then a day or two so the defendant can get his life in order prior to being incarcerated." The trial court, which did not address this second request, thereafter sentenced the defendant for his violation of § 21a-277 (b).

In sentencing the defendant, the trial court did not comply with the requirements of Practice Book § 910. That section, which provides in part that "the judicial authority shall order a presentence investigation, or the supplementation of any existing presentence investigation report," required the trial court to order a PSI. As with similar language in other sections of the Prac-

---

[12] See *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973), and *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

[13] Because we find this argument dispositive, we do not address the defendant's remaining claims.

tice Book, this requirement was intended to establish a procedural rule that is mandatory and not directory. See *State* v. *Williams,* 205 Conn. 456, 477, 534 A.2d 230 (1987).[14]

The defendant asserts that the absence of a PSI in this case violated his right to due process as guaranteed by the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution.[15] Because the sentencing process is a critical stage of a criminal trial, it must satisfy the requirements of the due process clause. See *Gardner* v. *Florida,* 430 U.S. 349, 358, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977); *Carter* v. *Illinois,* 329 U.S. 173, 178, 67 S. Ct. 216, 91 L. Ed. 172 (1946); *Consiglio* v. *Warden,* 153 Conn. 673, 676, 220 A.2d 269 (1966). "Although a criminal defendant is entitled to due process of law at sentencing . . . the range of due process rights in sentencing procedures is not as extensive as that at trial. *Williams* v. *New York,* 337 U.S. 241, 246–47, 69 S. Ct. 1079, 93 L. Ed. 1337, reh. denied, 337 U.S. 961,

---

[14] The state suggests that, because the defendant was on probation at the time of sentencing, having been convicted of the same offense one year before, a PSI was not necessary. The state urges this court to amend the mandatory PSI requirement of Practice Book § 910 by interpretation to conform with the provisions of General Statutes § 54-91a. Section 54-91a requires a PSI if the defendant has never been convicted or has had no conviction during the previous five years. The state mistakenly suggests that the timing of the PSI is somehow a substantive right, which the judiciary may not "enlarge, abridge or modify" under General Statutes § 51-14 (a). Plainly, however, the frequency of use of a PSI in court proceedings is a matter of practice and procedure over which the judiciary has plenary authority. See *Steadwell* v. *Warden,* 186 Conn. 153, 162–63, 439 A.2d 1078 (1982).

[15] "Due process claims under the federal and state constitutions can be treated together because they impose similar constitutional limitations. *Keogh* v. *Bridgeport,* 187 Conn. 53, 59–60, 444 A.2d 225 (1982). The defendant offers no argument for separate treatment of his state constitutional claim. Accordingly, we will consider only his federal constitutional claim. *State* v. *Mercer,* 208 Conn. 52, 67 n.9, 544 A.2d 611 (1988)." *State* v. *Flanders,* 214 Conn. 493, 500 n.4, 572 A.2d 983, cert. denied, 498 U.S. 901, 111 S. Ct. 260, 112 L. Ed. 2d 217 (1990).

69 S. Ct. 1529, 93 L. Ed. 1760 (1949); *United States* v. *Adams*, 694 F.2d 200, 202–203 (9th Cir. 1982) [cert. denied, 462 U.S. 1118, 103 S. Ct. 3085, 77 L. Ed. 2d 1347 (1983)]." *State* v. *Thompson*, 197 Conn. 67, 77, 495 A.2d 1054 (1985).

" 'Once it is determined that due process applies, the question remains what process is due. It has been said so often . . . as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands. . . . Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure.' *Morrissey* v. *Brewer*, 408 U.S. 471, 481, [92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)]." *Gardner* v. *Florida*, supra, 430 U.S. 358 n.9.

We must determine, then, whether the failure to afford a PSI, when one is due according to Practice Book § 910, implicates the due process clause. Several considerations convince us that it does. First, "[a] system of individualized sentencing cannot be fairly and effectively employed unless the sentencing decision is informed as well as structured. The principal method for supplying information to the court is the [PSI] . . . ." A. Spinella, Connecticut Criminal Procedure (1985), p. 749. " 'PSIs result from a presentence inquiry into the circumstances of the offenses, the attitude of the victim or his immediate family, the criminal record, social history and present condition of the defendant, and, if desirable, the mental and physical state of the defendant. General Statutes § 54-91a (formerly § 54-109); Practice Book § 911. "Their sole purpose is to enable the court, within the limits fixed by statute, to impose an appropriate penalty fitting the offender as well as the crime." *State* v. *Gullette*, 3 Conn. Cir. 153, 167, 209 A.2d 529 (1964).' " *State* v. *Cofield*, 22 Conn. App. 10, 21–22, 576 A.2d 156 (1990), rev'd on other grounds, 220 Conn. 38, 595 A.2d 1349 (1991),

quoting *Steadwell* v. *Warden*, 186 Conn. 153, 158–59, 439 A.2d 1078 (1982).

It has been determined that the PSI does in fact have a significant effect on sentencing decisions. In a 1980 survey of eighty-three Connecticut trial court judges, 91 percent responded "always" or "usually" when asked how often PSI reports affected their sentencing decisions. A. Spinella, supra, p. 750 n.18, citing A. Drude, Evaluation of Connecticut Judicial Department Office of Adult Probation's Presentence Investigation Report Project (1981), p. 22.

Among the procedural safeguards to which a criminal defendant is entitled at sentencing hearings is the right to counsel. See *State* v. *Thompson*, supra, 197 Conn. 77; *Consiglio* v. *Warden*, supra, 153 Conn. 676. This is based in part on the further requirement that a criminal defendant may not be sentenced on the basis of improper factors or erroneous information. See *United States* v. *Lemon*, 723 F.2d 922, 933 (D.C. Cir. 1983); *State* v. *Thompson*, supra, 77. It is presumed that counsel will be able to ascertain the reliability of and comment on the information relied on by the trial court in meting out a punishment. As stated previously, the principal method of furnishing information to the trial court for the purpose of sentencing is the PSI. For the right to counsel to have meaning at this stage, then, the PSI must be a critical aspect of the sentencing process. For these reasons, we conclude that the PSI is a procedural safeguard, the absence of which undermines a defendant's right to due process. Because in this case a PSI was never ordered, the defendant's right to due process was violated. This conclusion, however, does not end our inquiry. We must next consider whether the violation can be considered harmless.[16]

[16] This case does not present a situation "where the constitutional violation must be deemed harmful under all circumstances or where it is of such a nature that ascertainment of its harmfulness is impossible or so difficult as not to warrant the endeavor. Such cases are rare exceptions to 'the principle that an otherwise valid conviction should not be set aside if the review-

" '[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.' *Chapman* v. *California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705, reh. denied, 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241 (1967); *State* v. *Pittman*, 209 Conn. 596, 608–609, 553 A.2d 155 (1989); *State* v. *Plourde*, 208 Conn. 455, 469, 545 A.2d 1071 (1988); *State* v. *Green*, 207 Conn. 1, 9, 540 A.2d 659 (1988). The state bears the burden of demonstrating that the constitutional error was harmless beyond a reasonable doubt. *State* v. *Colton*, 227 Conn. 231, 253–54, 630 A.2d 577 (1993). That determination must be made in light of the entire record. See *State* v. *Francis*, 228 Conn. 118, 125, 635 A.2d 762 (1993)." *State* v. *Daugaard*, 231 Conn. 195, 212, 647 A.2d 342 (1994).

In light of the paucity of testimony or other evidence before the trial court when it sentenced the defendant, we find it impossible to say that the absence of a PSI or a supplemental PSI was harmless beyond a reasonable doubt.

The judgment of conviction of possession of marijuana with intent to sell is reversed as to the sentence only and the case is remanded for resentencing in accordance with this opinion.

In this opinion the other judges concurred.

---

ing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.' *Delaware* v. *Van Arsdall*, 475 U.S. 673, 681, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986)." *State* v. *Mebane*, 204 Conn. 585, 604–605, 529 A.2d 680 (1987) (*Shea, J.,* concurring), cert. denied, 484 U.S. 1046, 108 S. Ct. 784, 98 L. Ed. 2d 870 (1988).