STATE OF CONNECTICUT *v.* BARRY THOMAS
(AC 15740)

Landau, Schaller and Sullivan, Js.

Argued March 17—officially released September 15, 1998

*Susan M. Hankins*, assistant public defender, for the appellant (defendant).

*Ellen A. Jawitz*, deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Warren Maxwell*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of one count of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1). On appeal, the defendant claims that the trial court improperly (1) permitted the state to exercise a peremptory challenge to remove a venireperson, (2) failed to instruct the jury that disbelief of the defendant's testimony was not

affirmative proof of the opposite and (3) instructed the jury on flight as evidence of consciousness of guilt. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of July 18, 1994, the defendant's mother approached him and told him that a Hispanic male, who was later identified as the victim, had broken into their home and left with a boom box. The defendant had seen a Hispanic man running through the neighborhood with a boom box, and he left on a bicycle to find the man. The defendant's mother returned home and called the police.

The defendant found the victim, who was attempting to sell the boom box, and approached with bricks in his hands. He asked the victim how he had obtained the boom box, and the victim said that it belonged to him. The men argued and the defendant hit the victim in the head with one of the bricks. Mary Thorpe, who owned the property where the altercation was taking place, asked them to leave her yard. The defendant picked up the victim by his pants carried him out to the street. As the defendant punched and kicked the victim, the victim did not fight back.

The defendant produced a knife from his back pocket and stabbed the victim in the chest. The defendant then pulled the knife out of the victim's chest and threw it to the ground.[1] The victim ran up the street, holding his chest, leaving a trail of blood. The defendant took the boom box and returned home. Police were summoned to the backyard of 58-60 Edgewood Street in Hartford, where they found the victim in a pool of blood. The victim was rushed to a hospital, where he died as the result of the stab wound to the chest.

---

[1] The knife was described as a small paring or steak knife. It was later found at the scene by police officers and admitted into evidence at trial.

Police Officer Julio Camacho, who had gone to the defendant's home to investigate the burglary complaint lodged by the defendant's mother, was speaking to the defendant's mother when the defendant returned home and told Camacho that he had caught the man who had broken into his mother's house and that he "got into it with him." The defendant told Camacho that the police were no longer needed.

Camacho left in his cruiser and was headed south on Albany Avenue when he heard a radio broadcast that a person fitting the defendant's description had been involved in a stabbing. Camacho returned, found the defendant and arrested him.

At trial, the defendant claimed that he had acted in self-defense and later admitted that he had stabbed the victim in retaliation because the victim had swung at him.[2] The defendant was found guilty of one count of manslaughter in the first degree in violation of § 53a-55 (a) (1).[3] This appeal followed.

I

The defendant first claims that the trial court improperly permitted the state to exercise a peremptory challenge in violation of the defendant's right to equal protection under the state and federal constitutions. The defendant claims that the state's use of the peremptory challenge was racially motivated and that the trial court improperly denied his motion on the *Batson* challenge under *Batson* v. *Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

[2] In a written statement to the police that was admitted into evidence, the defendant stated that the victim retrieved the knife from the ground, the victim had the knife in his left hand, the defendant "pushed [the victim's] left hand toward [the victim] and that's when [the victim] got stabbed."

[3] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . ."

The following additional facts are necessary to our resolution of this claim. The jury selection spanned nine days and counsel questioned forty-four prospective jurors. The venireperson in question, D, was the twenty-first prospective juror to be questioned by the parties. At that point, five jurors had been chosen to serve on the panel, at least one of whom was African-American. The defendant in this case is also African-American.[4]

Before D came forward for voir dire, the prosecutor indicated to defense counsel that he would probably excuse D for lack of education, having seen on the questionnaire that D had completed only eight or ten years of school. Both counsel questioned D, who is African-American, with defense counsel proceeding first.

At the close of questioning, the defendant found D acceptable as a juror, but the prosecutor exercised a peremptory challenge against him.[5] Defense counsel did

[4] The record and transcripts are replete with information as to the race of each venireperson.

[5] The following colloquy ensued:

"[Defense Counsel]: I have to point out for the record that [the assistant state's attorney] indicated to me, prior to this venireperson coming forward, that he was going to excuse him for lack of education.

"[Assistant State's Attorney]: That's after I heard him, not—just not off the bat on paper. I did say that to [defense counsel], but the point of the matter is, I saw ten years of school and, automatically, that's when I exclude anybody, regardless of his race, but I'd like to hear him first to see if—if that bears true. And along with that we have a—a criminal conviction on him.

"[Defense Counsel]: We—we don't know that.

"[Assistant State's Attorney]: He has a criminal—

"[Defense Counsel]: I'm making a *Batson* challenge, Your Honor. There are any number of—of jurors that we have had who have much—

"The Court: Have less education, but on the panel?

"[Defense Counsel]: No, greater education—who do not express themselves as well as this gentleman.

"The Court: Your—your argument is what? That he rejected him because of his lack of education?

"[Defense Counsel]: There—there's nothing in the answers that this venireperson gave that is indicative of an inability to serve as a perfectly fair and impartial juror.

not attempt to show that the prosecutor's reasons for striking D were insufficient or pretextual, and the trial court made no findings in that regard. The trial court denied the defendant's motion on the *Batson* challenge and defense counsel did not take exception or address this issue further until taking this appeal.

The defendant claims that the trial court improperly allowed the state to use a peremptory challenge to remove an African-American venireperson because the reasons advanced by the state were pretextual and not race neutral. We do not agree.

"*Batson* established the guidelines for evaluating a criminal defendant's claim that the state's exercise of a peremptory challenge was based on purposeful racial discrimination. *State* v. *Holloway*, 209 Conn. 636, 640, 553 A.2d 166, cert. denied, 490 U.S. 1071, 109 S. Ct. 2078, 104 L. Ed. 2d 643 (1989); see *State* v. *Gonzalez*, 206 Conn. 391, 394–95, 538 A.2d 210 (1988). A defendant who alleges that he has been the victim of purposeful racial discrimination in the use of a peremptory challenge carries the ultimate burden of persuasion. *Batson*

"The Court: Which is the case on probably all the ones that have been rejected in the past. Mean—

"[Defense Counsel]: But he's a member of a—of an identifiable minority.

"[Assistant State's Attorney]: I didn't use race as a reason. That's the recent Supreme Court case, U.S. Supreme Court in *Batson*. My reason is simply, he said many times, doesn't know the difference between innocent and not guilty. After three explanations, he finally understood that one. And there were several other things that he just wouldn't go along with. Now, the last part here about not accepting circumstantial evidence, that would be enough for me to excuse him on any—for any reason, no matter who he is. . . .

"[Defense Counsel]: I challenge [the assistant state's attorney] to listen to the tape. What we—we have a situation here—

"[Assistant State's Attorney]: Well, what we challenged Mr.—wait a minute. I challenge this man right here to tell me I'm being biased. I have a black juror in this case, and I've never been biased in my life. I'm not about to start. He does not have the qualifications for a jury in a murder case, and I challenge him for that reason. He has eight years of school—

"The Court: Deny the motion on *Batson*."

v. *Kentucky*, supra, 476 U.S. 94 n.18. Once the defendant has established a prima facie case of purposeful racial discrimination, the burden shifts to the state to advance a neutral explanation for the venireperson's removal. . . . The defendant is then afforded the opportunity to demonstrate that the state's articulated reasons are insufficient or pretextual. *State* v. *Holloway*, supra, 641. Since the trial judge's findings in the context under consideration here largely will turn on evaluation of [the prosecutor's] credibility . . . a trial court's determination that there has or has not been intentional discrimination is entitled to appropriate deference upon review on appeal. . . . Id., quoting *State* v. *Gonzalez*, supra, 395. Therefore, we may overrule the trial court's conclusion only if we determine that it was clearly erroneous.

"In *Holloway*, our Supreme Court departed from *Batson* to the extent that it held that an accused does not have to first make out a prima facie case to be entitled to an explanation from the state. The court in *Holloway* stated that rather than deciding, based on the existence of a prima facie case, whether an accused is entitled to an explanation of the prosecutor's use of peremptory challenges, the better course to follow would be to hold a *Batson* hearing on the defendant's request whenever the defendant is a member of a cognizable racial group and the prosecutor exercises peremptory challenges to remove members of the defendant's race from the venire. . . . *State* v. *Holloway*, supra, 209 Conn. 646 n.4, quoting *State* v. *Jones*, 293 S.C. 54, 57–58, 358 S.E.2d 701 (1987)." (Internal quotation marks omitted.) *State* v. *Patterson*, 37 Conn. App. 801, 805–807, 658 A.2d 121 (1995), rev'd on other grounds, 236 Conn. 561, 674 A.2d 416 (1996), quoting *State* v. *Patterson*, 31 Conn. App. 278, 290, 624 A.2d 1146 (1993), rev'd on other grounds, 230 Conn. 385, 645 A.2d 535 (1994).

## A

The threshold issue that must be addressed in this appeal is whether the trial court afforded the defendant a hearing on his *Batson* claim. We note that the trial court ruled on the merits of the *Batson* challenge immediately after hearing the state's explanation of its peremptory challenge.

"In *State* v. *Patterson*, [230 Conn. 385, 393, 645 A.2d 535 (1994)], our Supreme Court concluded that 'because the defendant can waive one of the primary rights protected by judicial supervision of the entire voir dire, namely, his equal protection right against discriminatory peremptory challenges, the defendant can also waive the right to judicial supervision over the voir dire process itself.' It follows that the defendant can waive part of the process intended to protect his equal protection right, that is, his opportunity to demonstrate that the state's neutral explanation of its peremptory challenge is in fact pretextual.

"The *Patterson* court also held that, in such circumstances, 'waiver can be made by counsel, and it will ordinarily be inferred from the absence of an objection.' Id., 396." *State* v. *Patterson*, supra, 37 Conn. App. 809. In this case, the record indicates that defense counsel did not take an exception to the trial court's ruling that his *Batson* claim was denied. Moreover, there is no indication that defense counsel objected to the court's failure to afford him an opportunity to respond to the state's neutral explanation. Nor does the record reflect that defense counsel requested such an opportunity. We conclude, therefore, that the defendant was afforded a hearing on his *Batson* claim and waived his right to respond to the state's explanation of its peremptory challenge.

## B

"The ultimate decision as to whether the defendant has successfully demonstrated that the prosecution has

used their peremptory challenges in a racially discriminatory manner rests with the trial court. *Batson* v. *Kentucky*, supra, [476 U.S.] 96–97. In deciding whether the defendant has made the requisite showing, or if the prosecution's explanation is neutral or merely pretextual, the trial court should consider all relevant factors and circumstances. Id. A neutral explanation means an explanation based on something other than the race of the juror. At this step in the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. *Hernandez* v. *New York*, 500 U.S. 352, 360, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991). If the prosecutor's reason, however, is without regard to the particular circumstances of the trial or the individual responses of the jurors, [it] may be found by the judge to be a pretext for racial discrimination. Id., 371–72; see also *State* v. *Jones*, 29 Conn. App. 304, 331–32, 615 A.2d 149 (1992) [*Norcott, J.*, dissenting]. The factors that might be used to determine pretext have been discussed by our appellate courts. See *State* v. *Smith*, [222 Conn. 1, 6, 608 A.2d 63, cert. denied, 506 U.S. 942, 113 S. Ct. 383, 121 L. Ed. 2d 293 (1992)]; *State* v. *Gonzalez*, supra, [206 Conn. 399]; *State* v. *Jones*, supra, [329] (*Norcott, J.*, dissenting). These include whether the prosecutor's reasons are related to the case or are based on a group bias inapplicable to the prospective juror; whether the prosecutor questioned the juror, did so only perfunctorily, or asked questions not asked of other jurors so as to elicit a particular response; whether jurors of different races but similar characteristics were treated differently; and whether a disproportionate number of peremptory challenges were used to strike from the venire members of one particular race. *State* v. *Jones*, supra, [332–34]; *State* v. *Gonzalez*, supra, 399."[6] (Inter-

---

[6] We note that the defendant has not provided an adequate record to apply most of these factors because the race of the other jurors is not known

nal quotation marks omitted.) *State* v. *Patterson,* supra, 37 Conn. App. 807–808.

In this case, the trial court determined that the state's explanation of its peremptory challenge was facially valid. The state's justification was that because of his limited education, the venireperson did not have the requisite "qualifications for a jury in a murder trial." When the state questioned the venireperson concerning the concepts of presumption of innocence, reasonable doubt and circumstantial evidence to support that claim, he displayed a lack of understanding of those concepts. In fact, the state argued at the *Batson* hearing that defense counsel had to explain three times the difference between innocent and not guilty before the venireperson understood that concept. The defendant argued that the venireperson expressed himself better than some of the other jurors who had more education and that the state was using his lack of education as a pretext. The defendant fails, however, to demonstrate that any other member of the jury had less education than D. This was the concern expressed by the state. The record, in fact, does indicate that the state inquired into the education of every venireperson questioned when the defense counsel had not already done so. Simply because jurors express themselves similarly does not mean they have similar educations.

During the *Batson* hearing, the state responded that "the last part here about not accepting circumstantial evidence, that would be enough for me to excuse him on any—for any reason, no matter who he is." D's response during voir dire might have supported an excusal for cause.[7] "[T]he prosecutor's explanation need not rise

except that one African-American was accepted as a juror before D was questioned. We find, however, that the prosecutor did question D in the same manner and with the same questions as were asked of the other jurors.

[7] During the questioning of D concerning circumstantial evidence, D indicated that he would still need an eyewitness even if the judge told him that "circumstantial evidence and eyewitness evidence are the same under the

to the level justifying exercise of a challenge for cause." *Batson* v. *Kentucky*, supra, 476 U.S. 97.

We next turn to a second reason the state offered in excusing D, his criminal record, which was revealed in the juror questionnaire and consisted of a domestic dispute with his wife after which he was arrested. " 'Prosecutors commonly seek to exclude from juries all individuals, whatever their race, who have had negative encounters with the police because they fear that such people will be biased against the government.' *State* v. *Smith*, supra, 222 Conn. 14. '[T]his concern constitutes a neutral ground for the state's exercise of a peremptory challenge to excuse a black venireperson.' Id." *State* v. *Rodriguez*, 37 Conn. App. 589, 607, 658 A.2d 98, cert. denied, 234 Conn. 916, 661 A.2d 97 (1995). Because we conclude that either of these reasons was a valid basis for excusing D, we need not consider the other reasons advanced by the state. *State* v. *Gonzalez*, supra, 206 Conn. 405. We conclude that the trial court's evaluation of the prosecutor's explanation and its finding that a neutral explanation existed for D's removal was not clearly erroneous.

## II

The defendant next claims that the trial court improperly failed to instruct the jury that disbelief of the defendant's testimony was not affirmative proof of the opposite. We are not persuaded.

The defendant filed a request to charge the jury that disbelief of the defendant's testimony was not affirmative proof of the opposite.[8] The trial court denied this request to charge and the defendant excepted.

---

law," which indicated to the prosecutor that D, in essence, would not follow the law. After an initial round of questioning, the prosecutor again questioned D about the use of circumstantial evidence and D's responses remained unsatisfactory.

[8] The defendant requested that the trial court give the following instruction: "Affirmative facts cannot be established by disbelieving witnesses who

"Our review of the defendant's claim requires that we examine the court's entire charge to determine whether it is reasonably possible that the jury could have been misled by the omission of the requested instruction. See *State* v. *Rollinson*, 203 Conn. 641, 665, 526 A.2d 1283 (1987); *State* v. *Utz*, 201 Conn. 190, 209, 513 A.2d 1191 (1986). While a request to charge that is relevant to the issues in a case and that accurately states the applicable law must be honored, a court need not tailor its charge to the precise letter of such a request. *State* v. *Bennett*, 172 Conn. 324, 330, 374 A.2d 247 (1977). If a requested charge is in substance given, the court's failure to give a charge in exact conformance with the words of the request will not constitute a ground for reversal. See *State* v. *Jennings*, 216 Conn. 647, 663, 583 A.2d 915 (1990); *State* v. *Casey*, [201 Conn. 174, 178, 513 A.2d 1183 (1986)]. Whether a charge is possibly misleading depends on the substance rather than the form of what is said. *State* v. *Stevenson*, 198 Conn. 560, 571, 504 A.2d 1029 (1986); see *State* v. *McMurray*, 217 Conn. 243, 253, 585 A.2d 677 (1991); *State* v. *Kurvin*, 186 Conn. 555, 565, 442 A.2d 1327 (1982); *State* v. *Ortiz*, 217 Conn. 648, [662], 588 A.2d 127 (1991). In addition, [w]hether certain factors relating to witness credibility need to be stressed will largely be left to the trial court's discretion and will not be overturned on appeal absent a clear abuse of discretion. *State* v. *Mancinone*, 15 Conn. App. 251, 280 [545 A.2d 1131, cert. denied, 209 Conn. 818, 551 A.2d 757 (1988), cert. denied, 489 U.S. 1017, 109 S. Ct. 1132, 103 L. Ed. 2d 194 (1989)]." (Internal quotation marks omitted.) *State* v. *Jaynes*, 35 Conn. App. 541, 554–55, 645 A.2d 1060, cert. denied, 231 Conn. 928, 648 A.2d 880 (1994).

We find no Connecticut case law to support the proposition that a trial court must, or even may, instruct

deny them. . . . While it is true that it is within the province of the jury to accept or reject a defendant's testimony, a jury in rejecting such testimony cannot conclude the opposite is true." (Citations omitted.)

the jury that it cannot not use its disbelief of a witness' testimony as affirmative proof of the opposite. The defendant relies on the fundamental legal principles embodied in *State* v. *Coleman,* 14 Conn. App. 657, 671–72, 544 A.2d 194, cert. denied, 208 Conn. 815, 546 A.2d 283 (1988), and *State* v. *Alfonso,* 195 Conn. 624, 633, 490 A.2d 75 (1985). That principle of law, however, arises primarily on appellate review of sufficiency of evidence claims, and then applies only where there is no affirmative evidence. In that context, when it appears that the jury must have supplied the missing element by using its disbelief of a witness' testimony as proof of the opposite fact, that circumstance has been determined to dilute the state's burden of proof and to burden the defendant's right to testify. *State* v. *Coleman,* supra, 668.

The trial court in this case, unlike the trial court in *Coleman,* never suggested that the jury could "base its finding of guilt in part on the defendant's testimony and [its] disbelief in its truth" as affirmative proof of the opposite. Id. In addition, unlike in *Alfonso,* there was overwhelming evidence in this case contradicting the defendant's claim of self-defense and indicating that he had the intent to inflict serious physical injury on the victim.

The defendant testified that once he had the knife in his hand, nothing prevented him from running away in complete safety. There was also testimony that the defendant had carried the victim by his pants out to the street. When the defendant was asked whether he had acted in self-defense, he responded that it was more like retaliation.[9] In addition, Thorpe and three

---

[9] The defendant testified as follows:

"A. No, it wasn't self-defense that caused me to stab him. What caused me to stab him was he took a swing at me.

"Q. And so you retaliated. Is that what you're telling us?

neighborhood children who had witnessed the altercation testified that the victim was not fighting back, that the defendant produced the knife from his back pocket and stabbed the victim "hard" in the chest, "up to the handle" of the knife, and that the defendant pulled the knife out of the victim and rode away on a bicycle. The jury reasonably could have found, therefore, that the defendant did not act in self-defense and did in fact have the intent to inflict serious physical injury to the victim by virtue of this overwhelming evidence, and not merely because it did not believe the defendant's testimony.

A trial court is not required to give a requested instruction simply because it embodies a correct statement of the law. *State* v. *Timmons*, 7 Conn. App. 457, 464, 509 A.2d 64, appeal dismissed, 204 Conn. 120, 526 A.2d 1340 (1987). Here, the trial court was not required to give the defendant's requested instruction because the overwhelming evidence that the defendant had the intent required for manslaughter negated the likelihood that the jury's disbelief of his testimony would be affirmative proof of the opposite. Moreover, in light of the evidence against him, the instruction requested by him may well have confused the jury and increased the state's burden of proof. Accordingly, we conclude that the trial court's refusal to give the requested instruction was proper and did not mislead the jury.

### III

The defendant claims finally that the trial court improperly instructed the jury on flight as evidence of consciousness of guilt. We disagree.

"Flight, when unexplained, tends to prove a consciousness of guilt. *State* v. *Ferrara*, 176 Conn. 508, 516,

"A. It's natural.

"Q. Well, I'm asking you. Did you retaliate and stab him? Is that what you did?

"A. Yes, I did."

408 A.2d 265 (1979). Flight is a form of circumstantial evidence. Generally speaking, all that is required is that the evidence have relevance, and the fact that ambiguities or explanations may exist which tend to rebut an inference of guilt does not render evidence of flight inadmissible but simply constitutes a factor for the jury's consideration. *State* v. *Piskorski*, 177 Conn. 677, 723, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). The probative value of evidence of flight depends upon all the facts and circumstances and is a question of fact for the jury. *State* v. *Nemeth*, 182 Conn. 403, 408, 438 A.2d 120 (1980)." (Internal quotation marks omitted.) *State* v. *Wright*, 198 Conn. 273, 281, 502 A.2d 911 (1986).

We find that evidence of flight was relevant in this case even though the defendant admitted stabbing the victim. There was evidence that immediately after the victim had been stabbed, the defendant rode a bicycle to his mother's house. In the defendant's written statement, he indicated that his mother told him *after* he arrived home that she had called the police. The defendant contends that he ran home "into the arms of the police" knowing that the police had been called because of the burglary. When the defendant arrived home, however, he did not tell his mother that he had stabbed the burglar and told the police only that they were "no longer needed." The jury could have found that that conduct constituted evidence of flight, which tended to show a consciousness of guilt. The court instructed the jury that it was up to it to determine what weight to accord evidence of flight under the circumstances. "The court was not required to enumerate all the possible innocent explanations offered by the defendant. The fact that the evidence might support an innocent explanation as well as an inference of a consciousness of guilt does not make an instruction on flight erroneous. *United States* v. *Mesa*, 660 F.2d 1070, 1078 (5th Cir. 1981)." *State* v. *Wright*, supra, 198 Conn. 281.

The evidence of flight in this case tended to show that the defendant believed that what he had done was not merely an act of self-defense, but something that was considered wrong in the eyes of the law. While not absolute proof of guilt, the evidence of flight was sufficient to allow the jury to infer a consciousness of guilt on behalf of the defendant. Therefore, we conclude that evidence of flight was admissible. See 2 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 102b, p. 1012.

In considering the evidence, the jurors were free either to reject it or to accept it as they saw fit. They were not required to find that the defendant was guilty merely because he fled. *State* v. *Rosa*, 170 Conn. 417, 433, 365 A.2d 1135, cert. denied, 429 U.S. 845, 97 S. Ct. 126, 50 L. Ed. 2d 116 (1976); *State* v. *Delgado*, 13 Conn. App. 139, 144, 535 A.2d 371 (1987). Accordingly, we find no merit to the defendant's claim that the prejudicial effect of the instruction on flight outweighed its probative value and affected the jury's consideration of the defendant's claim of self-defense.

The defendant also raises for the first time on appeal several other grounds for attacking the trial court's instruction on flight. "A party is not entitled to have a claim reviewed on appeal on grounds different from those presented at trial. *State* v. *Braman*, 191 Conn. 670, 684–85, 469 A.2d 760 (1983). To hold otherwise would result in trial judges' being found to have erred on questions never fairly presented to them. *State* v. *Brice*, 186 Conn. 449, 457, 442 A.2d 906 (1982)." *State* v. *Adams*, 36 Conn. App. 473, 482, 651 A.2d 747 (1994), appeal dismissed, 235 Conn. 473, 667 A.2d 796 (1995). Accordingly, we will not review these claims.

The judgment is affirmed.

In this opinion the other judges concurred.